(Decided 19th June, 1883.)

---

## ELIZABETH LENTZ *vs.* JOHN J. PILERT.

*Orphans' Court—Intestate—Funeral expenses—Sole Creditor—Administration.*

H. died intestate leaving personal property in this State, but no relations. L. a niece, by marriage, of the intestate paid the funeral expenses and thereby became the sole creditor of the estate. HELD:
That L. was entitled to letters of administration.

APPEAL from the Orphans' Court of Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, IRVING, and RITCHIE, J.

*W. Burns Trundle,* for the appellant.

*William Grason,* and *Richard Grason,* for the appellee.

IRVING, J., delivered the opinion of the Court.

It appears from this record that on the 16th day of February, 1883, a certain Margaret Heinlein died intestate in Baltimore County. Four days thereafter, viz., on the 20th day of February, the appellee filed in the Orphans' Court of Baltimore County an application for letters of administration. That application is in the following language: "Whereas, on the 16th day of February, 1883, a certain Margaret Heinlein died without leaving a will, and to the best of my knowledge and information, no relatives in this country; I therefore make application to your Honorable Court the grant of letters of administration to me." This petition, it will be observed, does not aver that the intestate left any personal estate to be administered, and does not state that the intestate died in Baltimore County. Before the Orphans' Court had acted on that petition, the appellant filed her petition in the same Court stating the death of the intestate in Baltimore County, on the 16th of February, 1883, and that she left personal property amounting to three thousand dollars, in said county, and also valuable real estate. It further stated that Margaret Heinlein left "no child or descendant, nor father nor mother, nor other next of kin, either of the whole or half blood, nor any relations within this State;" but that the petitioner was a niece of George Heinlein, the intestate's husband, who had died several years before his wife, and that as such niece she was en-

titled, by the law of this State, to the one-fourth interest in the real estate. The appellant's petition further alleged, that on request Joseph B. Cook, an undertaker, had furnished "the burial case, carriages, hearse, and other requisites for the proper and decent interment of the remains of the said deceased, and that said funeral expenses amounting to $88.56, are a preferred claim against the estate of said deceased; that said bill has been duly proved by said Cook, and your petitioner has paid the said Cook the full amount thereof, and has taken from him an assignment of the same." The bill and assignment are filed with the petition. By virtue of these alleged facts the petitioner claims that she is the largest creditor of the estate of the deceased and entitled by law to the administration of the estate, and prayed for letters to be granted to her. Upon this petition, on the day of its presentation, the Orphans' Court passed an order refusing its application and granting letters of administration to the appellee. On the same day the appellant filed a petition praying leave to introduce testimony in support of her petition, which prayer was also rejected and appeal was taken from each order of the Orphans' Court in the premises.

The petition of the appellant praying for letters and stating the facts of the case was verified by petitioner's oath. The petition of the appellee was not. Inasmuch as the Court refused to hear testimony and have the same written down that the petitioner might use the same on appeal, we must and will assume that the Orphans' Court considered the facts established by the oath of the appellant attached to her petition, and that further testimony was unnecessary. The Court regarded the facts alleged as insufficient to give the appellant any legal right to claim administration, and regarding both applicants as entire strangers, committed letters to the appellee; and if the appellant has no superior right by reason of her having defrayed the expenses of burial, the Orphans' Court

exercised but a rightful discretion which is not reviewable. The appellant claims that, being the niece of the intestate's husband, she was her niece by affinity, and that whilst she was not bound to furnish burial for the deceased at her own cost, in the absence of all others, the duty did devolve upon her to order the requisites for proper burial, and that having done so, and having paid the bill, she is a creditor of the estate, and the "*largest creditor*," and therefore, by the Code, entitled to have letters upon the estate to the exclusion of the appellee, who has no interest in, or claim on, the estate. Section 30 of Article 93 of the Code provides, "if there be no relations, administration shall be granted to the 'largest creditor' applying for the same." The appellant relies on this section of the Code as establishing her right to letters of administration; and her solicitor contends that whether the word "creditor" used in this section be understood to mean one who became such in the life-time of the deceased, or whose claim arose against the estate after the testator's or intestate's death, it makes no difference; that in either case the appellant is a creditor in the sense of the statute. Because the law holds the estate, in the hands of the executor or administrator, bound to such person, who, from the necessity of the case, has provided for deceased's burial, for the expense incurred, he argues that the law implies a promise from the deceased while living to pay for such necessaries provided him after death. Baron ALDERSON gives countenance to such doctrine in *Chapple vs. Cooper*, 13 *Mees. & Wels.*, 253; and in a note to *Hare & Wallace's Comments on Rogers vs. Price, Ex'r.*, (3 *Y. & J.* 28,) the same theory of implied contract on the part of the decedent is deduced and suggested. The exigencies of this case do not require us either to accept or pronounce against that theory. It is not the ordinary way in which such allowances from the estate of a deceased person have been justified. Numerous cases exist where the person who has provided the

funeral has been allowed to recover from the executor or administrator to the extent of a reasonable outlay, in view of the rank and estate of the deceased, notwithstanding the executor may have given no orders. In such case because proper burial was indispensable, and somebody must take the responsibility of having it attended to, the law has generally been understood to accord payment from the estate on an implied promise on the part of the executor or administrator to pay it. *Chitty on Contracts,* 296; *Green vs. Salmon,* 8 *A. & E.,* 348; *Tugwell vs. Heyman,* 3 *Campbell,* 298 ; *Rogers vs. Price,* 3 *Y. & J.* 28.

The facts of the cases cited illustrate the propriety of this appellant, being next of kin by affinity, in the absence of persons standing in closer attitude, assuming to provide for the proper interment of the deceased. It was necessary, as Lord ELLENBOROUGH said in *Tugwell vs. Heyman,* that somebody should see to it, and as this appellant was niece by marriage to the deceased, it was eminently proper, if not her absolute duty, that she should have given the orders. Having done so, and having paid the expenses incurred, she is certainly, according to the authorities cited, entitled to reimbursement from the estate. She is therefore a creditor of the estate ; and if she be the "largest creditor" so as to meet that requirement of the statute, we see no good reason why she shall not be entitled, as a matter of right, to the administration.

By the statute of the State funeral expenses, to a reasonable extent, are made a preferred charge upon the estate, because of the indispensable necessity for proper burial. Inasmuch, therefore, as the person who incurs that expense is a creditor of the estate, we cannot perceive why *such* creditor was rejected as not being within the meaning of the law, which accords administration as a matter of right to the "largest creditor," in the absence of kindred who are regarded as having prior right. The only reason why a *creditor* should, in such case, be enti-

tled to administer, is because he has an interest in the estate's being administered, and being administered properly and promptly. The larger the demand against the estate the greater the interest; and therefore, without regard to respective fitness for the duty, the law of our State gives the "largest creditor" the prior right. A creditor who becomes such after the death of the decedent, and whose claim is entitled to priority of payment, even over the claims of those whose claims accrued in the decedent's life-time, has equal interest with any other creditors in the proper and prompt settlement of the estate. Being a creditor who is *preferred in payment,* he certainly ought not to be denied, when he is the largest creditor also, the same right and privilege in respect to administration which is accorded creditors of inferior degree as to payment. He is clearly within the reason of the rule. He is not excluded by the letter of the law, for there is no qualifying word prefixed or added to the word "creditor" except "largest," which only indicates the order of preference. In this case it does not appear that there is any larger creditor applying ; and we are told that in fact she is the only creditor. We do not find that the question has ever arisen directly in this State before ; but we are not without precedent and authority for such construction in England, whence our statutory provision is borrowed. By the common law it was the practice for the Ordinary to grant letters to the nearest friend. *Bracton,* 60. This was afterwards regulated by statute in the time of Edward III; and subsequently by 21 Henry VIII, *chapter* 5. By the last statute it was directed that if the executor refused, or the person died intestate, administration should be committed "to the widow of the same person, or to his next of kin." Thereafter it seems to have been fully established and practiced in England, that letters should be granted in a particular order of priority among kindred very similar to our own statutory provisions. In *Viner's*

*Abridgment, Vol.* 11, *2nd Ed., page* 86, we find the Eng-
lish law on the subject thus stated : " 1st. To the husband
of the wife's (separate) goods and chattels. 2ndly. To the
wife of the husband's goods and chattels ; but an adminis-
tration may be granted to the father before the widow,
and a residuary legatee ought to be preferred before the
widow in an administration *cum testamento annexo ;* if
there is no husband or wife living, then 3rdly, to the chil-
dren, sons or daughters. 4thly. If the children die
first, to the father or mother ; then 5thly, to a brother or
sister of the whole blood. 6thly. To a brother or sister
of the half blood, for they are all next of kin in equal
degree ; and if none of the half blood, then 7thly, to the
next of kin, uncle, aunt. or cousin ; and if none of these
desire the administration, then 8thly, to *a creditor ;* for
want of *all these,* 9thly, to any other person or persons at
the *discretion* of the Ordinary." The right of a *creditor*
to administration in the absence of next of kin, in Eng-
land, is fully recognized in all the books on the subject.
1 *Comyn's Dig. Adm'r, B.* 6 ; 4 *Bac. Ab. G, page* 68.
The English Courts have construed the term " creditor "
in such connection to embrace persons having claims for
funeral charges, and such who in any way became actually
creditors of the estate after the death of the person whose
estate is charged. In *Williams vs. Jukes,* 34 *L. J.,* (*Pro-
bate,*) 60, the plaintiff had become security for the deceased
in his life-time. *After his death* he paid the money. It
was held that, though the plaintiff did not pay the money
in the life-time of the testator so as to become his creditor
before his death, the payment afterwards made him such
creditor of the estate as *entitled him* to grant of letters.

In *Newcombe vs. Beloe, et al.,* 45 *L. J.,* (*P. & M.,*) 37,
it appears that the deceased left a will appointing execu-
tors. The deceased also left a daughter, who employed a
linen draper, Newcombe, to take charge of and provide
for the funeral. He did so, on her assurance he should

be paid from the estate. The daughter, in default of the executors to take letters, would have been entitled. She became insane, and Newcombe caused the executors to be cited to take letters, or show cause why letters should not be committed to him. The executors having been served and not appearing, the Court granted letters to Newcombe. The Judge, Sir J. P. WILDE, said, "I see no reason under the circumstances of the present case, why Mr. Newcombe should not be considered a *creditor*, and I therefore make a grant of administration to him *in that character.*" The Judge, in his opinion, refers to the case of *Fowler*, wherein the *undertaker* was regarded as a creditor, and letters were granted him. *Fowler's Case*, 16 *Jur.*, 894.

The same view of the law was taken by Dr. LUSHINGTON *In the Goods of C. Spitty*, 16 *Jur.*, 92. There the wife had a separate estate. The person who had paid the funeral expenses of the wife, took proceedings against the husband, and caused him to be cited to show cause why he should not administer. The husband appeared and contended that he could only be sued personally; but the Court adjudged that the plaintiff was a creditor of the wife's estate, entitled to be heard in that capacity. In that case it is proper to note that it was done notwithstanding the plaintiff had for several years been endeavoring to get the husband to pay the bill.

Manifestly the same reason underlies the rule, existing in England and established by our statute, which accords administration to some creditor when kindred fail or neglect. There is no language in the law of either place restricting its application to persons becoming creditors in the life-time of the decedent. Each class has the same kind of interest, and there seems to be both wisdom and equity in the English construction of the word *creditor* in that connection, and no good reason appears to exist why we should not adopt the same view. The appellee's counsel

in his brief, assumes that the appellant occupies the position of a bare purchaser of the undertaker's bill, and as having intruded herself thus into the position of holding a claim against the estate.   Whatever might be the legal status of a stranger holding such a position, his equity might be regarded as diminished by his seeking administration rights in that way ; but this appellant seems to have assumed the natural and praiseworthy responsibility of providing the requisites for so sad an occasion.   She may have made herself personally liable.   She has paid the bills and taken an assignment and occupies the relation of creditor.   If she had not taken an assignment, but had been sued and judgment had been recovered, according to Lord DENMAN, in *Green vs. Salmon,* (already cited,) which was a case of that kind, she would have been a creditor of the estate and entitled to reimbursement so far as the judgment recovered was for expenses suitable to the condition and estate of the deceased.   Whether the expense incurred in this instance was in keeping with the estate and situation of the deceased is a matter still with the Orphans' Court.   We have no concern with that in this case.   From what we have said it is apparent that the order of the Orphans' Court appealed from must be reversed.   For aught that appears to us this appellant is the largest creditor.   She only has applied as such creditor, and we think she is entitled to have letters.

*Order reversed, and*
*cause remanded.*

(Decided 19th June, 1883.)