Including Cases of October Term, 1919 and January and April Terms, 1920.

CHARLES B. T. HENDRICKSON, EXECUTOR OF MARY JANE PORTER,

*vs.*

## CHARLES ATTICK ET AL.

*Appeal from Orphans' Court—Exceptions to Evidence—Executor as Witness—Caveat to Will—Declarations as to Pedigree—Evidence as to Next of Kin.*

Code, Art. 5, Sec. 9, does not apply to appeals from the Orphans' Courts, and exceptions to the admissibility of evidence or to the competency of witnesses are not required to be taken in those courts.                                              **p. 7**

Code, Art. 35, Sec. 3, does not preclude the executor named in a will from testifying in a preliminary proceeding in the Orphans' Court to determine whether caveators to the will have such an interest in the estate of decedent as to entitle them to prosecute the caveat.                                              **p. 7**

Since declarations by a decedent as to the pedigree of her own family are admissible in evidence, an executor was properly allowed to testify as to statements made to him by testatrix in regard to the relationship to her of persons named as legatees in her will.                                              **p. 7**

A letter, neither of the parties to which was a member of testator's family, is not admissible to show, by statements therein, matters of pedigree in connection with that family, this being hearsay.                                              **p. 8**

Evidence by caveators to a will that they knew of no relatives of decedent nearer than themselves, they being grandchildren of decedent's aunt, who died when they were children, *held* insufficient to overcome the affirmative declarations of decedent that she had uncles in another State, whose names she gave, and whom she named as legatees in her will.                    p. 8

*Decided January 16th, 1920.*

Appeal from the Orphans' Court for Frederick County.

Submitted on briefs to Boyd, C. J., Burke, Thomas, Pattison, Urner, Stockbridge and Adkins, JJ.

*Frank L. Stoner,* for the appellant.
*Marion Duckett & Son* and *John F. Lillard,* for the appellees.

Boyd, C. J., delivered the opinion of the Court.

Martha Jane Porter died on the 10th day of November, 1917, in Frederick City, leaving a last will and testament which was admitted to probate by the Orphans' Court of Frederick County on the 14th of that month. On the 18th of December, 1917, Charles Attick and Mary Anderson filed a petition and caveat, alleging that they were her heirs at law and next of kin, and charging want of testamentary capacity and undue influence. They prayed that Charles B. T. Hendrickson, who was named as executor in the will, and who the petition alleged had qualified, be required to answer, that the order of the Orphans' Court admitting the will to probate be annulled and set aside, and that the estate be administered and distributed as in case of intestacy. An order was passed requiring said Hendrickson to answer the petition and caveat. He filed an answer, admitting that the will was probated and that letters testamentary were granted to him, and denying that the testatrix left as her heirs at law and next of kin Charles Attick and Mary Anderson, and also denied the charges of the want of testamentary capacity and undue influence.

In the order of the Orphans'. Court there are a number of recitals, amongst others, that on January 29, 1918, a petition was filed by the caveators to have issues sent to the Circuit Court, that a hearing was had and testimony taken in writing on May 23, 1919, on the part of the plaintiffs, and on June 5, 1919, on the part of the defendant. The order recited that upon the testimony taken,

> "the Court is of the unanimous opinion that Mary Anderson and Charles Attick, the petitioners and caveators, are the nearest next of kin of the said Martha Jane Porter, late of Frederick County, deceased. The defendant failing to produce any testimony or proof of any nearer next of kin, it is thereupon this 4th day of August, A. D. 1919, ordered that Charles B. T. Hendrickson, executor and defendant, file any issue he may desire, so it can be taken up with the caveators and issues agreed upon," etc.

The evidence taken referred to the relationship of the petitioners to the testatrix. Mrs. Anderson testified that she was forty years of age, was born in Frederick City and was a second cousin of Martha Jane Porter, and the rest of her evidence in chief was as follows:

"5. How do you arrive at that? A. Martha Jane Porter's mother was a sister to Mrs. Attick. 6. Do you know Mrs. Attick's first name? A. Martha J. 7. What was your maiden name? A. Mamie Attick. 8. What was your father's name? A. Albert S. Attick. 9. Do you know of any other relatives of Martha Jane Porter? A. I do not."

On cross-examination she testified that her grandmother was a sister of Martha Jane Porter's mother, and their name was "Adams" before they were married. Then this follows in her cross-examination:

"3x. They had several brothers living in New York State, had they not? A. I don't know of any of them; don't know any but Miss Porter. 4x. You mean you don't know anything about the history of the family? A. Know nothing but Miss Jane Porter, and her mother and my grandmother

were sisters. 5x. Where was the home of the Adams, your grandmother? A. My grandmother came from England when she was five years of age. 6x. Where did she live in this country? A. She lived in Georgetown, D. C., until the day of her marriage. 7x. Where did she live after that? A. In Frederick. 8x. Do you know where Miss Porter's mother lived? A. She lived in New York. 9x. And the history of the other members of the family, if any, you know nothing about. A. I don't know anything, only of Janie Porter."

She also said that Miss Porter had no brothers or sisters, that her grandmother died in 1889 and Miss Porter's mother died long before that, but she could not tell the year; that Miss Porter lived in Frederick City a good part of her life, came there about twenty years ago, or maybe longer, that she had been in the dressmaking business for a number of years in New York City and afterwards moved to Frederick. On re-direct examination she was asked: "Then you are the nearest relative that you know of to the deceased, Martha Jane Porter," and replied, "Yes, sir." Then this follows:

"Re-cross-examination (by Mr. Stoner): 1rx. As a matter of fact you have no knowledge whatever, personally, as to whether or not your grandmother and Miss Martha Jane Porter's mother had any brothers living in New York State or not? A. To my knowledge I do not know. Re-re-direct examination (by Mr. Lillard) 1rr. Were you in position to know? A. Well, I certainly was. I never heard them speak of any in my childhood days as long as they would visit us. 2rr. Did you ever hear Miss Martha Jane Porter say anything about any brothers and sisters of her mother? A. I did not. 3rr. Then Martha Jane Porter's mother and your grandmother were the only children? A. Were the only two I ever heard of or know of."

Charles M. Attick testified that he was born in Frederick and was thirty-six years of age, that he had lived is Berwyn, Md., about fourteen or fifteen years, that his father's name

was Albert S. Attick and lived in Frederick. Then this follows in his testimony:

"8. Did you know Martha Jane Porter, the deceased? A. Yes, sir. 9. Do you know your relationship to her? A. Yes, sir; Martha Jane Porter's mother and grandmother Attick were sisters. (Mr. Stoner): 'I admit that both witnesses are grandchildren of a sister of Martha Jane Porter's mother.'"

He denied on cross-examination that he knew Samuel Adams, referred to in the will as being a brother of Hester Adams, or Hester Adams or William Adams, and said that he never heard Miss Porter speak of them.

That was all of the evidence offered on behalf of the petitioners, and it will be observed that it is not even shown, unless it be inferentially, that their father is dead, and if dead, when he died. The appellant then testified, and this appears in his evidence:

"3. Will you state whether or not Martha Jane Porter at any time before her death made any statements to you with reference to her family; if so, state what she said? (Question objected to by Mr. Lillard; objection overruled by the Court; exception noted.) A. I had talked with Miss Porter frequently about her family affairs, her family on her mother's side particularly. I never knew her father. And in getting the data for the will she mentioned two uncles that she had in New York State. 'Well,' I said, 'where do they live.' She said, 'well, they live out in New York State,' but she never gave me the postoffice address. But she said she frequently went out there in the summer time and spent some little time with them, visited them, and she mentioned about they lived on the farm, and mentioned the names of Samuel and William Adams. And then, I say, in preparing the will she had those mentioned as some of the heirs. 4. About when was it with reference to the date of the will that she referred to those two uncles, David and Samuel Adams? A. She had talked of those some time even before she made the will, had talked to me about the family. 5. Did she talk to you about

those two uncles in about the time the will was made? A. Of course she mentioned that when we were getting the data together for the will, yes, sir. * * * 14. Did Miss Martha Jane Porter ever refer, in her conversations with you, to any of her other relatives except the two uncles is New York and the two Atticks? A. No, sir; she did not. 15. You have no personal knowledge as to whether or not those uncles are living or not? A. No, I do not. 16. Or whether they have children or not? A. No, sir. 17. Your only information is she said they lived in New York State on a farm? A. Yes, sir. 18. Did she state to you whether or not they had any children? A. No I don't recollect that she did. 19. Did she ever discuss that subject with you? A. No, not to my knowledge. 20. Did she say when she had visited them on their farms? A. She didn't specify the time; she said they usually went out in the summer time and spent their vacation period there."

Then after testifying that the testatrix died at the State Sanitarium at Sykesville, that she had lived in Frederick ten or twelve years after she returned from New York, that he did not know whether she kept up a correspondence with her relatives in New York after she returned, this appears in his evidence:

"31. That is about all you know, about it, isn't it? A. I know nothing else except, as I say, what she told me she wanted those two heirs to have, and I jotted it down. (Questions by the Court): Q. Did she specify at the time where you could find them? A. She did not, no, sir. I have gone over the greater part of New York State, and have gotten a bundle of correspondence from different people, but haven't just struck the right one. It was just an omission on her part and mine too. Q. How many years did you say since she had been to New York before she died? A. I think I would be safe in saying at least ten years."

The witness on cross-examination testified that he had made inquiries in, he supposed, about half the counties of

New York for William and Samuel Adams, but so far had not been able to connect up the relationship between any of those names and Miss Porter. He said they had found a William and Samuel Adams, but it had not yet been shown that they were the ones referred to.

As will be seen above, an exception was noted to the Court overruling an objection to the question marked "3," and whether or not that exception was intended to, and does apply to all the evidence of the appellant in reference to statements made by Miss Porter is immaterial, as exceptions to the admissibility of evidence, or to the competency of witnesses, are not required to be taken in the Orphans' Court, but may be taken and insisted on in this Court. *Stewart* v. *Pattison,* 8 Gill, 46; *Denison* v. *Denison,* 35 Md. 361, 381. Section 9 of Article 5 of Code does not apply to appeals from those courts. *Cover* v. *Stockdale,* 16 Md. 1. But the appellant was a competent witness, and was not excluded by Section 3 of Article 35. We held in *Hamilton* v. *Hamilton,* 131 Md. 508, that that section did not prevent caveatees or caveators from testifying at the trial of issues framed on a caveat to a will, and as this proceeding was merely a preliminary one, in which the Court was to determine whether the caveators had such interest in the estate of the decedent as entitled them to file and prosecute the caveat, it would seem clear that that section did not prevent the appellant from testifying to such statements as he said the decedent made to him. The evidence itself was admissible as Martha Jane Porter was a member of the family about which she spoke, and was dead when the witness testified. *Craufurd* v. *Blackburn,* 17 Md. 49; *Jones' Admx.* v. *Jones,* 36 Md. 447, 457.

The declarations were not offered for the purpose of affecting the will, or to get the interpretation of the testatrix of any part of it, but they were offered as tending to show that the caveators were not the next of kin, and hence not entitled to file a caveat. CHIEF JUDGE LE GRAND in *Walston's Lessee* v. *White,* 5 Md. 297, on pages 304, 305, pointed out the

purposes for which extrinsic evidence can be offered, such as that for determining the object of a testator's bounty, to identify the person intended by the testator, etc. In this case the declarations were made before the will was made, and also when she was furnishing the data for the will, which was executed on February 1, 1917—about nine months before her death. It is true that up to the time of the hearing the appellant had not been able to locate them, but he was still endeavoring to find the two uncles of the testatrix, to each of whom she left $50.00 in her will. It is important to ascertain whether they or any of their children are living.

During the taking of the testimony of the appellant a part of a letter was read from Miss Seaman to Mrs. Abbott, in which she stated that "Aunt Mary," whoever she was, had told her that Miss Porter's mother was one of six children—three boys and three girls—that Mrs. Porter's name was Hester and the three brothers were named Samuel, David and William and she thought all were married and had children. Although no objection appears in the record to the introduction of that letter, under the authorities we have cited above we are at liberty to pass on its admissibility, and can have no doubt that it was not admissible. So far as we are informed none of the parties to the letter are members of the family, and if "Aunt Mary," or either of the others is, her testimony would have to be taken, and of course the letter was not admissible, as it was hearsay. It ought to be ascertained by proper efforts what the facts are in reference to the Adams family, and we do not understand why they, or some of them, cannot be located, if in existence.

But taking the evidence of the appellees alone, even without that of the appellant, and giving it all the effect it can possibly be entitled to, it manifestly falls far short of what is necessary to prove their relationship. They seem to know little or nothing about the family, except Miss Jane Porter. Mrs. Anderson very frankly said that she did not know whether her grandmother and Miss Porter's mother had any

brothers living in New York State. When the grandmother of the appellees died in 1889 Mrs. Anderson was ten years of age and Charles Attick six. So they would not likely have had much information from her, and Miss Porter's mother died before that. Then when we take into consideration the evidence of the appellant as to what Miss Porter told him about her uncles (excluding everything in the letter to Mrs. Abbott), the evidence of the appellees, which is purely negative, is wholly overcome by the statements of Miss Porter, which were affirmative, and in her will she left legacies to those two uncles.

The determination of the question of the right of these parties to file a caveat has been already delayed for an unusual time, and it is to be regretted that there must be any further delay, but under our view of the evidence we must reverse the order and remand the cause for further proceedings. It ought not to take a great deal of time to ascertain the facts about the Adams family in New York State, and the Orphans' Court ought at once to fix a time for hearing, giving the parties a reasonable opportunity to have determined whether any of the Adams families are in existence, and then act on the evidence which is before them at another hearing, but it would be a waste of time and money to try issues framed at the instance of the appellees, and then possibly find out that they were not the nearest next of kin.

*Order reversed and cause remanded, the appellees to pay the costs.*