ARTHUR A. KAISER ET AL. *v.* JOHN EBERSBERGER

[Nos. 3-5, April Term, 1941.]

418

*Decided April 30th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*J. Calvin Carney*, with whom were *Edward P. Wald-schmidt* and *Preston A. Parr* on the brief, for the appellants.

*Milton I. Vogelhut*, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Two nephews and a niece of a decedent, her only relatives by consanguinity, and all non-residents of the State, appeal from the dismissal of a petition of one of them for revocation of letters of administration granted to a brother-in-law of the decedent. The brother-in-law, not related otherwise to the decedent, was appointed on the day after the death, as the choice of the decedent, and as a creditor by virtue of his having undertaken to pay the

funeral expenses. *Lentz v. Pilert*, 60 Md. 296, 299. And it is urged that there being no will the next of kin were first entitled to letters if they applied for them. Code, art. 93, sec. 23. "No relations, except a widow, child, grandchild, father, brother, sister or mother shall be considered as entitled unless they shall apply for the same." Code, art. 93, sec. 33. The nephew, Arthur A. Kaiser, called at the Register of Wills' office on the day after the death and again, three days later, to inquire about opening a safe deposit box to see if there was a will, intending to apply for letters if there was not, but the brother-in-law had been appointed at about the time the nephew first appeared; and it is now objected that the letters to him were issued without the allowance of any opportunity to the next of kin to apply, and that a delay which would have afforded such an opportunity was required by law. It is objected also that the brother-in-law was a mere volunteer in undertaking payment of the funeral expenses, and was not therefore entitled to be considered a creditor, as there were ample funds of the estate, in his own hands, when he did so.

Mrs. Meta Ebersberger, of Baltimore City, died on September 26th, 1940. According to evidence taken she had asked her husband's brother to take charge of her affairs, and to see to her funeral, and had given him keys to a box in which she kept valuables, and to her wardrobe. He took possession of those things, found the box to condertaken the funeral expenses, and considered himself at the Orphans' Court on the next day for guidance and for appointment as administrator. He had already undertaken the funeral expenses, and considered himself, a creditor by virtue of the fact. Before letters were issued, inquiries were made from the Orphans' Court to learn whether the decedent had a safe deposit box in which a will might be found, but she had no other box or depositary. The letters were then issued without delay on the ground that intestacy was established. Arthur A. Kaiser, the nephew, was in the Register's office when the letters were being granted, but was told by a deputy

Register of Wills that it was usual to wait at least until after the funeral, which was to take place in two days, and left; and when he came on the day after the funeral found that the letters had been issued as stated.

The delay which, as it is contended, would have afforded the next of kin an opportunity to apply, is first thought to be required by the provision of section 17 of article 93, that, in cases of a supposed intestacy, as distinguished from a known intestacy, letters are not to be issued until at least twenty days after the death and at least seven days after application for them. *Williams v. Addison*, 93 Md. 41, 46, 48 A. 458. For want of that delay the letters are thought to have been issued unlawfully. The statutes provide generally that letters may be issued forthwith when an owner of personal property in the state dies. Code, art. 93, sec. 15. And the provision in section 17 is evidently for assurance, when needed, that there was no will. From the early issue of the letters "the presumption would be that such dying intestate was notorious or was proven as required." *Jones v. Harbaugh*, 93 Md. 269, 274, 48 A. 827, 829. In this case the court was evidently satisfied that there was no will; and evidence taken later abundantly proved it.

Upon a petition of the nephew Arthur A. Kaiser, however, the question of issue of the letters was reopened. The testimony of many witnesses was taken, and, as stated, it was proved that no will was ever executed, or prepared. Close friends of the decedent declared that there was none to their knowledge, and even the witnesses produced by the petitioner went so far only as to state that the decedent had intended to have a Mr. Rosenberger, manager of a nearby branch of a trust company, secure a lawyer to draw a will; and Mr. Rosenberger, confirming this, testified that the decedent could never decide on the disposition of her property, and nothing looking to the execution of a will was done. In view of the hearing had on full proof, an objection now that a delay should have been allowed for the purpose of searching for a will, or for more proof that there was none,

is deprived of materiality. It is fully established that none was missed by lack of waiting. "The legislature certainly never designed that the grant of letters on the estate of an intestate should be deferred or suspended beyond the period of twenty days from the death of the intestate, and seven days after application made by another person, simply to enable a non-resident to make application for letters, and, having declared that it should not be necessary to give notice to a party out of the state, it would seem necessarily to follow that it was perfectly competent to the orphans' court to grant letters to the party next entitled, or to any other person recognized by law as competent to receive them; and, when letters are so granted, there is no provision of law, nor principle of reason or policy, that requires the letters so granted to be revoked, to the end, simply, that a subsequent application, made by a party residing beyond the limits of the state, may be gratified." *Ehlen v. Ehlen,* 64 Md. 360, 363, 1 A. 880, 882.

But it is urged that the giving of a right to the next of kin to apply for letters (section 23) implies that a reasonable time for the application must be allowed, and that none was allowed in this instance. The appellants consider that Arthur A. Kaiser, applying as soon as he did, applied within the meaning and purpose of the statute, and thus rendered himself entitled to the letters. He was put off on the first day of his coming to court, and failed to apply, by no fault of his own, but by the remark of the deputy Register of Wills that it was usual to wait until after the funeral, and finally came for his application the fourth day after the death, and three days after letters had been issued. The statutes do not specify any time for the application, and this court has taken the view that any allowance must be left to the judgment and discretion of the Orphans' Court. "As a general rule, it is no doubt proper for the orphans' court to give some reasonable time for the relations who are not required to be notified [as these relatives were not, sec. 33], or creditors, to assert their claims. But there may be

cases where the security of the estate and the right of. creditors require immediate action. Of this the orphans' court is the best judge." *McGuire v. Rogers,* 71 Md. 587, 589, 18 A. 888, 889. An element of fraud or mistake might alter the rule, but there is none found in this case. Haste by the brother-in-law to apply first would not constitute fraud. And when he did apply the court had before it a case in which there were no relatives living within the State, and a creditor, according to the testimony probably the only creditor, who had been asked by the decedent to look after her affairs, and to whom she had given her keys, had come forward. The court might properly conclude that application by relatives living at a distance was not to be anticipated and proceed without delay to make the appointment. The action was open to correction if necessary. But the grant to a creditor applying was regular under the law, in the absence of application by relatives. Code, art. 93, secs. 31 and 32. And if it was regular at the time, relatives subsequently applying, would not be entitled to have the letters revoked, at least in the absence of fraud or mistake. *Chryssikos v. Demarco,* 134 Md. 533, 536, 537, 107 A. 358; *Ehlen v. Ehlen,* 64 Md. 360, 363, 1 A. 880.

To the objection that the brother-in-law was not a true creditor but only a volunteer, because there was no need of his undertaking the funeral expenses, it would seem sufficient to answer that if, as testified, there were no other creditors the status of creditor was not necessary to the issue of letters to him, because in the absence of application for letters by the relatives not required to be notified, letters might have been issued to one not a creditor, in the discretion of the Orphans' Court. Section 32; *Chryssikos v. Demarco,* 134 Md. 533, 537, 107 A. 358. But there may have been need of some known individual's guaranteeing and paying the expenses. Procedure through the Orphans' Court requires time for payment of even those expenses, and the undertaker may have been unable or unwilling to wait. Or he may have been unwilling to trust to payment from the estate at all, be-

cause of lack of knowledge of its resources, or otherwise. The decedent had told John Ebersberger to pay her funeral expenses out of the $600 in the box, but he could not have used it at all unless appointed administrator. He therefore on his own responsibility engaged the undertaker, who looked to him for payment, and was in fact paid by him. The court cannot now say that he was not a creditor merely because the estate was good for the amount.

*Judgment affirmed, with costs.*