## ESTATE OF BERNARD CHARLES SOOTHCAGE
### *v.* KING

[No. 59, September Term, 1961.]

*Decided December 6, 1961.*

The cause was argued before Brune, C. J., and Prescott, Horney, Marbury and Sybert, JJ.

*Samuel S. Eisenberg* and *William J. O'Donnell,* for appellant.

*Claude A. Hanley* and *Roger C. Duncan,* for appellee.

Brune, C. J., delivered the opinion of the Court.

This is a controversy over the right to administer the estate of one Bernard Charles Soothcage, who died intestate, a resident of Towson, Baltimore County, Maryland, on April 19,

1960. The appellant, Eisenberg, a Baltimore attorney who had represented the decedent in several matters over a period of some ten years, applied as a creditor of Soothcage for letters of administration and was appointed administrator of the estate by the Orphans' Court of Baltimore County on April 21, 1960. The appellee, Mrs. King, a resident of Glens Falls, New York, and the sister of the decedent, thereafter filed two documents in the Orphans' Court. The first, executed April 28 and filed April 29, 1960, was a renunciation of her right to administer her brother's estate and a request that her Towson attorney, Mr. Hanley, be appointed administrator. The second, filed May 11, 1960, was a petition for the removal of Mr. Eisenberg as administrator and contained a renewal of her request for Mr. Hanley's appointment. On September 14, 1960, the Orphans' Court, following a hearing held on August 31, at which both Eisenberg and Mrs. King testified, entered an order which, according to its terms: (a) revoked the letters of administration previously granted to Eisenberg; (b) revoked authority previously given Eisenberg, as administrator, to prosecute an appeal [in a case below referred to]; and (c) appointed Mrs. King administratrix and accepted Mr. Hanley as her local agent for service of process. Eisenberg appealed from that order under Code (1957), Art. 5, § 25, to the Circuit Court for Baltimore County, and upon affirmance by that Court of the order of the Orphans' Court, he appealed under the same Code section to this Court. Only parts (a) and (c) are challenged on this appeal.

Soothcage's death was sudden and he had no relatives in Maryland. Through the diligence of the Chief of Police of Towson, Mrs. King was reached by telephone a few hours after the death of her brother and she promptly made arrangements for his funeral through Glens Falls and Towson undertaking firms, and she actually paid the funeral expenses. The appellant and appellee agree that the night after Soothcage's death the appellant telephoned the appellee, but their versions of what was said are quite different.

It is undisputed that at the time of Soothcage's death he had a suit pending, in which Eisenberg represented him, in the Baltimore City Court against Air Conditioning, Inc. for

commissions claimed to be due Soothcage as a salesman. Sometime before April 19, this case had been set for trial on April 25.

As given in the Circuit Court, Eisenberg's version of his telephone conversation of April 20 with Mrs. King (he says there was only one, she says there were two conversations) is, in brief, that he told her of his representation of her brother and of the need for the immediate appointment of an administrator because of the imminence of trial of the above suit, that he asked her to come to Maryland to qualify, but that she said she could not afford the trip and would not come. He also stated that Mrs. King informed him that she had been given the name of Mr. Claude A. Hanley, of Towson, as an attorney, that Mr. Hanley had called her on the morning of April 20 with regard to becoming the attorney for the estate and that she would call Mr. Hanley the next morning to tell him that she no longer wanted him to represent the estate.

Mrs. King testified in the Circuit Court that she asked the Towson undertaker to recommend a good lawyer and that as a result she called Mr. Hanley on the morning of April 20 (not vice versa) and asked him to represent the estate, which he agreed to do. Her version of the Eisenberg call or calls is that he called twice. The first time he told her of being her brother's lawyer and of the pending suit and asked if she wanted to come there; she said that she saw no sense in going and sitting in court where she could do nothing. Eisenberg called her back about a half hour later and said he wanted to take care of the estate. She told him she already had Mr. Hanley, "and that's all there was to it." She denied that Eisenberg asked her to come down and take out letters. When asked if he hadn't told her he wanted her to come down, she replied: "I said maybe I could come down if necessary. Then he turned around and said it wasn't necessary."

In their telephone conversation(s) Mrs. King told Eisenberg of the existence of the decedent's (and her) invalid brother and said that he lived in New York. She was not asked and did not give his full name and address.

On April 21 Mr. Eisenberg filed his application for letters, in which he described himself as a creditor of the decedent.

He listed Mrs. King as a sister of the decedent and gave her address, but made no reference to the decedent's brother.

Mrs. King's renunciation and request for Mr. Hanley's appointment were filed on April 29. On May 11 she filed her petition for Mr. Eisenberg's removal. In it she alleged that she had no notice of Mr. Eisenberg's application and that he had failed to disclose to the Orphans' Court that she did not want him to become administrator, and she repeated her request for Mr. Hanley's appointment. Mr. Eisenberg's answer asserted that in their telephone conversation of April 20, Mrs. King had stated that she desired him to be named as administrator. This answer was not sworn to—a point which we shall consider below. The testimony at the Orphans' Court hearing is not included in the record and we do not have before us the testimony of either party on this or any other matter in that Court. In the Circuit Court Mrs. King included no statement to the effect that she wanted Mr. Eisenberg to act as administrator in her account of the telephone conversation, nor did Mr. Eisenberg so testify in the Circuit Court.

The order of the Orphans' Court of September 14 recites: (a) that the decedent left surviving him a sister, Mrs. King, and a brother; (b) that letters were granted to Eisenberg; (c) that upon the latter's application for letters the Court "was not informed that Fannie M. King wished to be appointed Administratrix, even though such was apparently known to * * * Eisenberg;" (d) that at the time of the filing of Eisenberg's petition Mrs. King had made arrangements for the burial of the decedent and had become liable for his funeral expenses, and that she paid them; and (e) at the time of the granting of letters to Eisenberg, Mrs. King had not renounced her right to administer.

The appeal to the Circuit Court under Sec. 25 of Art. 5 of the Code (1957) required a trial *de novo*. Therefore, neither the testimony before the Orphans' Court nor its findings thereon are now of any controlling effect. In the Circuit Court Mrs. King amended her petition to include allegations (i) that on the date of his application for letters Mr. Eisenberg was not a creditor of Soothcage and (ii) that letters were granted to him "as a result of a mistake of fact and a lack of knowledge

of certain facts which should have been furnished the Court by Mr. Eisenberg." The latter addition seems rather obviously inspired by the findings of the Orphans' Court. Mr. Eisenberg traversed both of the added allegations.

On the basis of Code (1957), Art. 35, § 3 (the "Dead Man's Act") the Circuit Court excluded most of the evidence offered by the appellant to show that he was a creditor of the decedent at the time of the grant of letters. The trial judge also held that under a contract of employment (a so-called power of attorney), which was admitted in evidence, relating to the suit of Soothcage v. Air Conditioning, Inc., which was pending but had not been tried at the time of the grant of letters, the decedent was not then indebted to the appellant. Under this instrument Soothcage authorized Eisenberg to settle or compromise his claims and agreed to pay Eisenberg 40% of any recovery "plus all court costs and necessary expenses involved in the prosecution of said suit and/or claims." He further assigned the claim to Eisenberg as security, authorized him to collect any money due thereon and to retain thereform the amount due as his fee, plus court costs, and in addition he authorized the clerk of any court in which suit might be filed to enter the suit to the use of Eisenberg in pursuance of the assignment. Some of the testimony of Eisenberg which was excluded related to advances made prior to April 21, 1960, for which he claimed he was entitled to reimbursement under this instrument.

In an oral opinion delivered at the conclusion of the hearing, the trial judge held that there was no admissible evidence to show that Mr. Eisenberg was a creditor of the decedent on the date of the grant of letters. He therefore held that the Orphans' Court had been correct in revoking the letters granted to Mr. Eisenberg. He further held that it had acted in the proper exercise of its discretion in appointing Mrs. King as administratrix to succeed Mr. Eisenberg.

The questions presented to us are somewhat differently stated by the parties, and we state them in our own terms and order. They are: (i) should the appeal from the order of removal entered by the Orphans' Court be dismissed because

the appellant, the administrator whose removal was sought, did not submit his answer in the Orphans' Court to the petition for his removal under oath?; (ii) was testimony of the original administrator, appointed as a creditor, relating to indebtedness of the decedent to him, inadmissible because of the Dead Man's Act, Sec. 3 of Art. 35 of the Code (1957)?; (iii) was the renunciation by the decedent's sister of her right to administer a bar to her subsequent appointment as administratrix?; and (iv) should the revocation of the grant of letters to the original administrator be affirmed because his appointment was made under a mistake of fact due to concealment on his part?

The first question which we have stated above presents what is equivalent to a motion by the appellee to dismiss the appeal because the appellant's answer to the appellee's petition for the appellant's removal was not sworn to, as the appellee contends that it should have been under Code (1957), Art. 93, § 278. Even if we assume (what is not clear from the scanty record before us of the proceedings in the Orphans' Court) that the Orphans' Court had directed plenary proceedings to be had and hence that an answer under oath was required, or that it was required without specific order in any plenary proceedings in the Orphans' Court, we think that the appellee is not entitled to prevail on this contention. The short and sufficient answer to it is that the appeal from the Orphans' Court to the Circuit Court under § 25 of Art. 5 of the Code (1957) requires a trial *de novo,* and any technical defect in pleading in the Orphans' Court seems of no importance on such a trial. Particularly is this true where, as here, the defect was the absence of an affidavit of one party in support of his answer, and it is clear that that party had testified under oath in the Orphans' Court (even though his testimony there is not before us), and no objection based upon the absence of the affidavit appears to have been raised in that court. We need not consider what the rule might be if the Circuit Court had been sitting in strictly appellate review of the order of the Orphans' Court based on the proceedings in that Court, nor yet what it might be if this case had involved a direct ap-

peal from the Orphans' Court to this Court. In making this comment we do not imply that our conclusion on this point might be otherwise in either of the events stated.[1]

The second question in the order in which we have listed them is, somewhat more fully stated, whether testimony of the appellant as to transactions involving the decedent intended to show that the decedent was indebted to the appellant, was inadmissible under § 3 of Art. 35 of the Code (1957) in proceedings for his removal as administrator, where his claim to appointment had been founded upon his being a creditor of the decedent and the party seeking his removal claimed that he was not a creditor. This precise question does not appear to have been decided previously by this Court, but we think that under the terms of the statute and prior decisions construing it, it does not apply to a proceeding of this sort.

The pertinent portion of the statute provides that "In actions or proceedings by or against executors, administrators * * * or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, * * * no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator, [or] intestate" except in circumstances not here present. This section must be read in the light of § 1 of Art. 35, which removed the disqualification of witnesses for interest, subject to certain exceptions, including those stated in § 3. *Shaneybrook v. Blizzard,* 209 Md. 304, 121 A. 2d 218. The general purpose of the exception here involved is to equalize the position of the parties by imposing silence upon the survivor as to transac-

---

1. See the discussion of the question of waiver in *Cover v. Stockdale,* 16 Md. 1, 7-8, a case cited by the appellee, which seems distinguishable from the instant case on the facts pertaining to waiver. Cf. the provisions of Ch. 117 of the Acts of 1825 and its statutory revisions held inapplicable in the *Cover* case and in *Denison v. Denison,* 35 Md. 361, and in *Hendrickson v. Attick,* 136 Md. 1, 109 A. 468, to appeals to this Court from Orphans' Courts (but applied in *Morgan v. Dietrich,* 178 Md. 66, 12 A. 2d 199, without citing any of these three cases) with the broader provisions of our present Maryland Rule 885 and the definition of "lower court" contained in Maryland Rule 800(b). See also Committee Comment on Rule 885, Code (1957), Vol. 9, p. 476.

tions with the decedent. *Ortel v. Gettig*, 207 Md. 594, 604, 116 A. 2d 145 (to cite only one of many cases so holding). Section 3 does not apply in a proceeding to determine whether or not persons seeking to caveat a will have sufficient interest in the estate of the decedent to entitle them to prosecute the caveat proceedings. *Hendrickson v. Attick*, 136 Md. 1, 109 A. 468. And it does not bar the testimony of a party on issues in caveat proceedings. *Hamilton v. Hamilton*, 131 Md. 508, 102 A. 761; *Griffith v. Benzinger*, 144 Md. 575, 125 A. 512. In the latter case, after quoting from the *Hamilton* case, it was said (144 Md. at 596) : "In addition to what is said there, it is apparent that the reason for the statute does not exist in such cases. The statute was intended to prevent one party to a transaction from testifying to the acts and declarations of a decedent whose acts are under consideration in a proceeding to which the witness is a party, *to enforce obligations* arising from such transactions." (Italics ours.) See also *Horner v. Frazier*, 65 Md. 1, 10, 4 A. 133; *Temple v. Bradley*, 119 Md. 602, 608, 87 A. 394.

In this proceeding Eisenberg is not seeking to enforce or collect upon any obligation of the decedent. The controversy is over the correctness of his appointment as administrator on the basis of his being a creditor. The grant of letters is said to be a judgment *in rem*. (*Emmert v. Stouffer*, 64 Md. 543, 3 A. 293; *Matthews v. Fuller*, 209 Md. 42, 50, 120 A. 2d 356), but it does not establish the enforceability of any claim against the estate. We think that the effect of the statute and of the Maryland decisions construing it was succinctly and aptly stated by Judge Chesnut in *Riley v. Lukens Dredging & Contracting Corp.*, 4 F. Supp. 144, at 147 (D. C., Md., 1933) as follows: "It seems clear * * * that the testimony now excluded by the Act is only that testimony of a party to a cause which would tend to *increase or diminish the estate of a decedent by establishing or defeating a cause of action by or against the estate.*" (Italics ours.)

Under this test, which we recently approved in *State, Use of Miles v. Brainin*, 224 Md. 156, 164-66, 167 A. 2d 117, the statute is not applicable to a controversy over the appointment or removal of an administrator, even where the validity

of the appointment may depend upon his being a creditor. The Circuit Court was accordingly in error in excluding Mr. Eisenberg's testimony as to transactions with the decedent offered to show that he was a creditor at the time of his application. We also think that the decedent's obligation to pay court costs and other expenses under the so-called power of attorney was not limited to an obligation to repay such charges only out of whatever recovery might be had in the suit to which that document pertained. In view of our above holdings, we think that the exclusion of Eisenberg's testimony as to such advances made during the life of the decedent was erroneous, and we find it unnecessary to consider a possible independent ground for its admissibility under *Ridgely, Exec. v. Beatty,* 222 Md. 76, 81-83, 159 A. 2d 651, holding admissible the testimony of a party with regard to transactions with third parties.

Cases in other jurisdictions supporting the rule that the testimony of a party as to transactions with the decedent is not barred in proceedings of this sort by "Dead Man's Acts" similar to ours include *Scott v. Smith,* 171 Ind. 453, 85 N. E. 774; *Kelley v. Jeffries,* 147 Ga. 741, 95 S. E. 287; and *Smith v. Smith,* 257 S. W. 2d 335 (Tex. Civ. App.).

What we have said above does not relate to either any so-called proof of claim which Mr. Eisenberg might file in the Orphans' Court or to the problem of evidence which he may face under the statute in establishing a claim against the estate, if his claim is contested. See Code (1957), Art. 93, §§ 93, 99, 103, 104; Art. 35, § 54; 1 Sykes, *Probate Law and Practice* (1956), §§ 715, 716, 722; *Bogart v. Willis,* 158 Md. 393, 148 A. 585; *Burrell v. Veanie,* 203 Md. 407, 411, 100 A. 2d 815. Cf. *Sullivan v. Doyle,* 193 Md. 421, 67 A. 2d 246; *Talbert v. Reeves,* 211 Md. 275, 127 A. 2d 533. It appears that Mr. Eisenberg could execute the required affidavit in support of his claim, but would be barred by the statute from testifying to transactions with the decedent if his claim were contested.

The remaining two questions stated above unfortunately come before us without findings of fact by the trial court on questions where the testimony is in conflict. It appears to us from the recitals in the order of the Orphans' Court of Sep-

tember 14, 1960, that that Court found that not all material facts known to Mr. Eisenberg had been presented by him to the Orphans' Court when he applied for letters and that Mrs. King had not then renounced her right to administer and that her renunciation was due to concealment or a mistake of fact. These findings, however, have lost their effectiveness by the appeal and trial *de novo* in the Circuit Court; and there are no comparable findings, so far as we can discover, by the Circuit Court. The latter court seems to have proceeded solely on the ground that Eisenberg had failed to prove himself a creditor.

Because of the error in applying § 3 of Art. 35 to bar Mr. Eisenberg's testimony as to transactions with the decedent in this proceeding for his removal as administrator, and the absence of any other ground of decision than that he was not a creditor, we must remand the case for further proceedings. In such proceedings the question of mistake or concealment as a basis for revoking Mr. Eisenberg's appointment as administrator and as a basis for relieving Mrs. King from the consequence of her renunciation will probably come up. In order to avoid the possibility of a second appeal in this case [2] presenting either or both of these points, pursuant to Rule 885, we shall express our opinion on these questions of law, but we are not, of course, undertaking to determine the facts. That must be done by the Circuit Court. The statute (Code (1957), Art. 5, § 25, *supra*) provides that on appeal to the Circuit Court, the case shall be heard *de novo* and the court shall "give judgment according to the equity of the matter." This means that the Circuit Court is to consider the evidence adduced before it and that the case goes on and is decided as if no judgment had been rendered. *Borden Mining Co. v.*

---

**2.** *Eisenberg, Administrator of Soothcage v. Air Conditioning, Inc.,* the suit pending at the time of Eisenberg's appointment and the supposedly imminent trial of which was the stated reason for the haste in seeking the appointment of an administrator, came before this Court on the appeal of Eisenberg (based largely on the contention that certain items for commissions had been improperly disallowed) and resulted in an affirmance of the judgment. See 225 Md. 324, 170 A. 2d 743.

*Barry,* 17 Md. 419, 429; *Zitzer v. Jones,* 48 Md. 115, 117; *Montgomery Ward & Co. v. Herrmann,* 190 Md. 405, 409, 58 A. 2d 677. We think that in giving judgment "according to the equity of the case," the Circuit Court may enter any judgment which the Orphans' Court might properly have entered on the same evidence; and we deem it pertinent, therefore, to consider the powers of the Orphans' Court with regard to these last two questions.

We are of the opinion that, notwithstanding the fact that Mrs. King, as a non-resident, was not entitled to notice of Mr. Eisenberg's application for letters, yet if letters were issued to him by the Orphans' Court as the result of concealment or mistake, that Court would have power to revoke the letters so granted. *Lutz v. Mahan,* 80 Md. 233, 30 A. 645, in which an order removing an administrator was affirmed; *Watkins v. Barnes,* 203 Md. 518, 102 A. 2d 295, in which the revocation of the probate of a will and of the grant of letters of administration, c.t.a. was upheld. In the latter case, this Court said (203 Md. at 522) : "It has long been established that an Orphans' Court has the power to revoke an order for the probate of a will, or for the issuance of letters of administration, passed by it improperly upon material misrepresentation, however innocently made. The right to administer justice would be seriously impaired if the Orphans' Court possessed no power to revoke a probate or letters which it had previously granted upon a mistaken state of facts." See also Sykes, *op. cit. supra,* § 501, p. 457; *Jones v. Harbaugh,* 93 Md. 269, 48 A. 827; *Chryssikos v. Demarco,* 134 Md. 533, 537, 107 A. 358; *Kaiser v. Ebersberger,* 179 Md. 417, 422, 19 A. 2d 701. All of these three cases recognized the rule that letters may be revoked if issued as a result of fraud or mistake, but found it inapplicable. Neither mistake nor concealment was discussed in *Ehlen v. Ehlen,* 64 Md. 360, 1 A. 880, which is strongly relied upon by the appellant.

Likewise, we are of the opinion that if Mrs. King's renunciation were executed and filed as a result of concealment or a mistake of fact, the Orphans' Court would have power to permit her to withdraw it and to grant letters of administration to her. This phase of the case is in somewhat confused

condition, as it appears that Mrs. King never has filed a petition or other pleading specifically directed to the withdrawal of her renunciation or to her own appointment. Her actions in defending the order of the Orphans' Court in the Circuit Court and the affirmance thereof by the latter court on appeal to this Court, certainly are practical manifestations of her desires, and we see no reason why the Circuit Court should not permit an appropriate petition or petitions to be filed on remand. (Cf. the *Borden Mining Co.* and *Montgomery Ward* cases above cited, where the plaintiff was permitted in the Circuit or City Court to take a non-pros or to move to dismiss his case where the appeal had been taken by the defendant, and the reviewing court dismissed the case without prejudice.) As to the power of an Orphans' Court to permit the withdrawal of a renunciation made under a mistake of fact—and its powers would certainly be no less if the mistake were due to concealment—see *Thomas v. Knighton,* 23 Md. 318, 327; *Slay v. Beck,* 107 Md. 357, 361, 68 A. 573; *Mitchell v. McCormick,* 143 Md. 328, 122 A. 245; Sykes, *op. cit. supra,* § 341. This power was also recognized in *Lutz v. Mahan, supra,* 80 Md. at p. 237, but it was there held that the party seeking to withdraw his renunciation had alleged no sufficient ground for doing so.

Since evidence pertinent to the ground upon which the Circuit Court decided the case was, in our judgment, improperly excluded, and since other grounds upon which the case might have been decided in favor of one party or the other were not determined, we shall remand the case without affirmance or reversal for further proceedings not inconsistent with this opinion.

> *Case remanded without affirmance or reversal for further proceedings not inconsistent with this opinion; the costs of this appeal to be equally divided.*