*In re* EATON'S ESTATE.

WILLS — EFFECT OF CHANGES IN CIRCUMSTANCES — IMPOSSIBILITY OF EXECUTION.

> Testator executed a will by which he provided that three-fourths of his estate be held by his executors as a trust fund for his son, who, if he should become confirmed in temperate habits and of sufficient prudence, should be entitled to receive the entire fund. The remaining fourth of the estate was bequeathed to the children of a deceased daughter. Provision was made in the instrument for testator's wife, who, however, died before testator. The son referred to also died before the testator. *Held*, that the cessation of the reason for any trust, and the impossibility of executing the related provisions of the will for the distribution of the estate rendered the instrument invalid and the property should be divided among the testator's grandchildren in accordance with statute.

Error to Saginaw; Gage (William G.), J. Submitted January 20, 1910. (Docket No. 103.) Decided March 5, 1910.

Charles E. Brenner and S. B. Borland, executors of the last will and testament of Daniel L. C. Eaton, deceased, petitioned for a distribution of said estate. The petition was granted in the probate court, and Emma C. Eaton, guardian of Lesla K. Eaton, appealed to the circuit court. A judgment sustaining the order of the probate court is reviewed by contestant on writ of error. Reversed, and judgment entered for contestant.

*William F. Paine*, for appellant.

*A. Elwood Snow*, for appellees.

The facts are that the testator, Daniel L. C. Eaton, made his will April 17, 1900. The wife of testator died in May, 1902. His son, George B. Eaton, died in January,

1905, leaving a widow and one child, both of whom survived the testator, as did children of testator's deceased daughter, Marie P. Pendleton. Testator died November 18, 1906. His will was admitted to probate. Two of the three executors named in the fifth clause of the will qualified. Upon the petition of these executors, the probate court, March 14, 1908, made an order authorizing said executors to pay over to the children of Marie P. Pendleton one-fourth of the amount of the personal estate in their hands, being $4,678.44. On April 10, 1909, upon petition of said executors, the probate court made an order assigning the residue of said estate. This order, after reciting various descriptions of real estate owned by the testator at the time he died, proceeds as follows:

"To be assigned to the heirs of the said deceased according to said will now on file in said probate office, in the following proportions, to the heirs of George Eaton, deceased, interested in said real estate, three-eighths part thereof, and to the heirs of Pendleton, deceased, interested in said real estate, five-eighths part thereof, with the exception of a trust fund of fifteen thousand ($15,000.00) dollars, which is retained by the trustees appointed by the direction of said will of said deceased, which said fund is to be maintained out of said estate, and the income of which is to be applied on the annuity created by said will; and that the heirs of Marie Pendleton, deceased, and the heir of George Eaton, deceased, are sole heirs of said deceased. It is therefore ordered, adjudged, and decreed by the court that after deducting the sum of fifteen thousand ($15,000.00) dollars, retained by said trustees, the residue of the personal estate, and the residue of the proceeds of the sale of the real estate, as set forth in the final account of said executors, reference thereto being had, and which said final account is made a part of this decree for the purposes hereinbefore set forth, and said pieces and parcels of land be and the same are hereby assigned to the heirs according to law and the will of said deceased."

On the same day an order was made discharging, exonerating, and acquitting the executors from all liability in the premises excepting with respect to certain lands sold upon contract, as to which said lands administration is to

continue. The bonds of the executors were reduced, and, except as stated, administration of the estate was declared to be closed. The will of Daniel L. C. Eaton, so far as it is important here, is as follows:

"*Second.* I devise and bequeath to my wife, Mary Eaton, in case she survive me, all the estate, real and personal, of every kind, which shall belong to me at my decease to have, use, enjoy and control during her life. I also grant to her full power, for the purpose of its care, control and management, to sell and convey any part of it, either real or personal, and to invest, reinvest and change as she may see fit and it is the intention to give her, in said property, in the manner above stated, and with the power above stated to enable her to use and care for it, only a life estate. It is my direction that she shall not be required to execute any bond whatever, as executrix of this will.

"*Third.* All that shall remain of my estate, both real and personal, and also of the proceeds thereof, at the decease of my wife, or in case I shall survive her, then all of my estate, both real and personal, I devise and bequeath as follows: One-quarter thereof in equal parts to the children then living of my deceased daughter Marie P. Pendleton. The other three-quarters, in trust to my executors and trustees hereinafter named to be held, managed, cared for and disposed of under the following trust, viz.:

"(1) Out of the income, and the proceeds thereof to furnish from time to time to my son, George B. Eaton, during his life, such amounts of money as in their judgment they may deem proper for the uses of living and support of himself and family, and having in view the property which he may be possessed of, and of the income thereof, which he may be receiving therefrom from time to time, and which property I have and shall have furnished him, my executors will provide him so that at all times he shall have ample means for the comfortable and proper support of himself and family.

"(2) The reason for placing such property in my executors and trustees, in trust, arises from the personal habits of my son George and to provide against my estate being wasted, dissipated and unwisely disposed of by his indiscretion and inconsiderateness. My executors are therefore authorized, when, in their judgment they regard it prudent and for the best interests of my son, and of said estate, so to do, to turn over to him and in trust to his use

and management as his own such parts of the property of the trust as they think proper, and to do this from time to time as they shall find expedient to be warranted for the best interests of himself and family and the proper management of the property placed in said trust. If it shall appear to my trustees that the property intrusted to him is not properly cared for, managed or preserved, they shall not intrust to him any additional portions of such property beyond the portion of the income or proceeds thereof, which are to be applied for the support of himself and his family, as above provided.

"(3) If, at any time, in the judgment of my executors my son George should become permanently confirmed in good and temperate habits and danger shall be finally and fully removed of his wasting or misusing the property of the trust, and that he can be safely and wisely intrusted with the full care, management and preservation therefore, they in that case, are authorized to transfer to him the entire property, which is held in said trust but such transfer of the property, and my son's right thereto, do and shall expressly depend upon the precedent condition of the fact that he shall in the judgment of any executors and trustees become permanently confirmed in good and temperate habits; that danger of his wasting or misusing and not properly preserving the property shall not in their judgment exist, and that he can in their judgments safely and wisely be intrusted with the full care, management and preservation of the property.

"(4) Upon the decease of my son George, the property then remaining in said trust held by my executors and trustees shall be disposed of as follows: In case his wife, Emma E. Eaton, shall survive him, she shall be paid out of such property the sum of three hundred dollars annually so long as she shall remain the widow of my son George. In case of her remarriage such payment shall cease. A sufficient amount of such property shall continue to be paid in such trust, so that the income therefrom will provide for the payment annually of said sum of three hundred dollars to said Emma. The remainder of such trust property after that which may be required to provide for the payment of said three hundred dollars annually to said Emma as above stated and the fund in trust for her at the termination of the trust shall go and be transferred, one half thereof to the child or children then living of my son George, in case there shall be more than one such child then living they shall take in equal

shares; and the other half of such property shall go and be transferred in equal shares to the children then living of my deceased daughter, Marie P. Pendleton."

The widow of George B. Eaton, describing herself as guardian of his and her infant daughter, appealed from the orders of April 10, 1909, to the circuit court, assigning as reasons the following:

"That said probate court failed to take into consideration, either in the final account or in the order distributing the estate, certain items of interest which should have been computed. That said probate court erred in the interpretation which was given to the will as to the respective shares belonging to the heirs, and allowed to Lesla K. Eaton, said minor, less than the share to which the said minor was entitled. That the order of said probate court dismissing the executors and releasing their bond was prematurely made for the reason that the funds of said estate were then and are yet in the hands of said executors, who refuse to pay over any part of the same to the said minor or to her guardian."

OSTRANDER, J. (*after stating the facts*). It is the contention of the appellant that one-half of the estate of the testator should have been assigned to the heir of George B. Eaton, the other one-half to the heirs of Marie P. Pendleton, subject to the continuance, during her life, or widowhood, of the trust fund created to secure her annuity. The theory of appellant is that the will contains no provision for the distribution of the estate, under the circumstances which existed at the time the testator died, and, therefore, the estate must be assigned, subject to said fund, to the children of his deceased children as representatives of their parents.

It is clear that the reason for creating a trust estate embracing three-fourths of decedent's property did not exist at the time of his death. The trust created by the will could not be executed, and the division of the property in accordance with the third subdivision of the will could not be made. The provision of the will which postponed the immediate devolution of the estate was wholly ineffec-

tive. It is equally clear that the testator contemplated that his son George might earn—become entitled to take —the whole of the trust fund, or three-fourths of the estate. If he did, there would then be no fund in the hands of the trustees to be disposed of under the provisions of the fourth subdivision of the third clause of the will. The will cannot be given effect according to its terms.

It is said that because the testator omitted to make changes therein, or to make a new will, after the death of his son George, it must be assumed that he intended that one-fourth of the estate should, in any event, pass to the children of his daughter, together with one-half of the remainder, while the child of his son should take one-half the remainder or only three-eighths of his estate, and that out of the three-fourths interest there should be carved a life estate for the widow of the son. The will, however, provides for no such thing, and no such result can be arrived at by construction. The language employed by the testator is not ambiguous. His meaning is not doubtful. But his clear intention, as expressed in the will, cannot be carried out. It would be pure assumption to say that he intended that if his son George did not survive him his (George's) daughter should have but three-eighths of his estate. We are of opinion that the executors, as trustees, acquired title to no part of the property, and that the estate was one which, subject to debts of the testator and to expenses of administration, devolved upon his death upon the children of his children, respectively, by right of representation. This should have been the order and decree of the probate court.

The judgment of the circuit court is reversed, and the record will be remanded, with directions to the probate court to vacate its orders in the premises and to assign the estate in the manner herein indicated. Appellant will recover her costs of the circuit court and of this appeal out of the general estate.

MONTGOMERY, C. J., HOOKER, MOORE, and STONE, JJ., concurred.