CAROLINE BRANNAN ᴇᴛ ᴀʟ. *v.* WILLIAM T. ELY
ᴇᴛ ᴀʟ., Aᴅᴍɪɴɪsᴛʀᴀᴛᴏʀs ᴄ. ᴛ. ᴀ.

[No. 24, January Term, 1929.]

*Decided March 21st, 1929.*

The cause was argued before Bᴏɴᴅ, C. J., Uʀɴᴇʀ, Aᴅᴋɪɴs, Oғғᴜᴛᴛ, Dɪɢɢᴇs, Pᴀʀᴋᴇ, and Sʟᴏᴀɴ, JJ.

*John C. Kump* and *David Ash,* with whom was *Harry C. Kalben* on the brief, for the appellants.

*Charles Lee Merriken* and *W. LeRoy Ortel,* with whom was *Frank M. Merriken* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore City, under which the residue of the personal estate of Joseph H. Pfister, who died testate at his home in that city on January 18th, 1928, was distributed to the persons who were his heirs at that time under the statutes of distribution and descent in force in this state. His will, which was executed January 11th, 1902, and probated on February 23rd, 1928, contains among other items this clause:

"I give, devise and bequeath all the rest and residue of my estate, real, personal and mixed, and wheresoever the same may be situated, unto my friend George R. Willis. * * * In trust to have and to hold the same with full power and authority in him vested, to receive all of the rents, issues and profits thereof, and after the payment of all taxes, public dues and assessments, for which the said property may be liable; the payment of premiums for insurance from loss against fire upon such of said property as may be insurable against loss by fire; the payment of all costs, necessary in his judgment to incur for the preservation of said property, and the proper execution of the trust hereby created; to pay the balance of said income unto the said Mary Ellen Pfister for the term of her natural life, and upon her death, to transfer and deliver the trust estate as the same may then be constituted, unto such persons then living who would under the laws of the State of Maryland, inherit real estate of me had I died intestate."

The Mary Ellen Pfister mentioned in that clause died in June, 1923, or 1924, and the question submitted by the appeal is whether the residuary estate of the testator should be distributed to such persons as would, under the laws of this state, at the time of her death have inherited real estate from him had he died intestate then, or whether it should be dis-

tributed to such persons as were his lawful heirs at the time of his death. At the time of Mrs. Pfister's death his nearest relations were ten first cousins, but, after her death and prior to his own, one of those cousins died, so that at his death only nine of them survived. Mary C. Stockman, the deceased cousin, left to survive her three children, Caroline Brannan, William J. Stockman, and Joseph H. Stockman, all of whom are living. Those three children contend that, since their mother was living at the death of Mary Ellen Pfister, she took an indefeasible interest in the residuary estate of Joseph H. Pfister, and that they are entitled to participate in the distribution thereof. The nine surviving first cousins contend on the other hand (1) that, since Mrs. Pfister predeceased the testator, the trust proposed by the residuary clause of his will never came into existence, and that (2) either by the statutes of distribution and descent, or, according to the true intent and meaning of the will itself, his residuary estate must be distributed to those persons who were entitled to inherit real estate from him at the time of his death.

It appears that Joseph H. Pfister, the testator, was the son of John Pfister, an emigrant from Zurich, Switzerland, who married Margaret Bollack of Baltimore, Md. John had, so far as is known, but one brother, Jacob, who left four children, three daughters, Mary Elizabeth Pfister Hummon, Barbara Caroline Pfister Mullett, and Emma M. Pfister Loeffler, all of whom survive, and one son, John Pfister, who died May 19th, 1928. Margaret Bollack, his wife, had two sisters and one brother, no one of whom was alive at the death of Mary Ellen Pfister. Two of them left children. Catherine, who married Charles H. Ely, left one son, William Thomas Ely, and Peter Bollack, the brother, left four sons who are now living, Peter, Christian, Isaac S. and John, one daughter, Mary Stockman, who died September 17th, 1924, leaving three children, Caroline Brannan, Joseph Stockman and William Stockman, and another daughter, Ella Summers, who died in 1898, leaving two children who are now living.

So that, at the death of Mary Ellen Pfister, the nearest relatives of Joseph H. Pfister were four first cousins on his father's side, Mrs. Hummon, Mrs. Mullett, Mrs. Loeffler and John Pfister, and six on the side of his mother, William Thomas Ely, Peter, Christian, Isaac and John Pfister, and Mary Stockman, and all of them were living at the death of the testator except Mary Stockman. These were, so far as the record shows, the only persons who would have been entitled to inherit real estate from him had he died intestate at the date of Mary Ellen Pfister's death (Code, art. 46, sec. 1, art. 93, sec. 135), and, excepting Mary Stockman, they were all living at the time of his death.

From these facts it is obvious that the trust proposed by the clause under consideration for the benefit of Mary Ellen Pfister never came into existence, for nothing ever existed upon which it could fasten. *Eaton's Appeal,* 160 Mich. 230. The will was ambulatory, and, during the life of the testator, neither Mrs. Pfister nor the trustee had any interest in it or any rights under it, nor had they any right, title, or interest in the property to which it referred. Its sole and manifest purpose was to provide an income for Mrs. Pfister in the event, and only in the event, that she survived the testator. The only other duty imposed by the will upon the trustee was "upon her death" to deliver the trust estate to the persons "then living who would under the laws of the State of Maryland" inherit real estate from the testator had he "died intestate." Since the trustee could have had no title to the estate during the life of the testator, and since Mrs. Pfister predeceased him, he certainly could not have delivered it to the devisees, whoever they were, "upon her death," nor at all prior to the death of the testator, even if, as appellants contend, there was a valid trust. So the only duty it could have imposed upon him was, at the death of the testator, to transfer the trust property to those entitled to it either under the will or under the statutes of distribution and descent. It was suggested that he was also required to "determine" the distributees, but the will gives him no such power, and, in

the absence of authority from that source, it is not clear how he could have obtained it. If he took anything at all under that clause, it was at most a dry legal estate, and the entire beneficial ownership and right of possession of the property instantly, upon the death of the testator, vested in those entitled to take either as heirs of the testator or under the will. That would follow whether those persons living at the death of Mrs. Pfister, who would have inherited real estate from the testator had he died intestate at that time, took the property by purchase under the will, as contended by the appellants, or whether the heirs of the testator took it either by purchase or inheritance, as contended by the appellees. For in either case the right of such persons to the immediate possession of the estate became complete and consummate upon the death of the testator, whether the property was real or personal. *Denton v. Denton,* 17 Md. 403; *Long v. Long,* 62 Md. 66; *Hooper v. Felgner,* 80 Md. 262; *Hooper v. Smith,* 88 Md. 577; *De Bearn v. Winans,* 114 Md. 474; *Colbourn v. Union Infirmary,* 114 Md. 109; *Handy v. McKim,* 64 Md. 560; *Abell v. Abell,* 75 Md. 62; *Graham v. Whitridge,* 99 Md. 282.

The vital question in the case, however, is whether, by the language of that clause of his will which we have quoted, the testator intended his property to go ultimately to those persons living at the death of Mrs. Pfister who would, had he died intestate, then have inherited real estate from him, or whether he meant it to go to such persons living at the time of his death as would have inherited real estate from him then had he died intestate.

At the time the will was made the testator had no relatives nearer than first cousins. While there is nothing in the record to indicate that his relations with them were other than friendly, his contacts with them were occasional and casual. It does not appear that they had any claims upon his bounty, or that he thought of them at all in that connection, further than that they were his nearest relatives and might possibly be his heirs. From the provisions of his will and from the fact that he afterwards married her, it may be

inferred that his principal concern was to provide for the support of Mary Ellen Pfister, the widow of his brother, John. So that his primary purpose in including that clause in his will was to provide for her, and the provision for the ultimate disposition of his residuary estate at her death was obviously incidental and secondary to that. He naturally preferred his blood relations to strangers, and no doubt it was for that reason that he provided that it should go to such persons "as would under the laws of the State of Maryland" have inherited real estate from him had he died intestate.

When the will was made he must have contemplated that Mrs. Pfister would outlive him, and the language of the clause must be read in connection with his anticipation of that contingency. When, therefore, he said that the trustee was to deliver the trust estate "upon the death" of Mrs. Pfister to "such persons then living who would * * * inherit real estate of me had I died intestate," he must have intended that language to apply only in the event that Mrs. Pfister survived him. And when in the same clause he directed the property to be transferred, upon Mrs. Pfister's death, to persons "then living" who would have inherited real estate from him had he died intestate, he must have referred to such persons as might be living at her death if she survived him. For the words "then living" must be read with the words "who would * * * inherit real estate of me had I died intestate." At the time of Mrs. Pfister's death there were no persons "then living" who "would" have inherited real estate from him, because he was still living, and the words "had I died intestate," refer not to the time for ascertaining the persons who would compose the class to whom he intended his estate to go, but to the method of determining who would be members of that class. And as the words "then living," depended upon the implied condition that Mrs. Pfister survived him, and as that condition failed, they are without effect unless they be taken as qualifying the words "had I died intestate." Any other construction would not only be in conflict with the letter of the clause, but without any

sound basis in either reason or law. For, if the testator had meant to leave his property to a class composed of definite and ascertained persons living at a given time, he could have and no doubt would have said so. And since he did not say so, there is no reason to believe that he intended the identity of the persons composing that class to depend upon so uncertain an event as the death of a third person during his lifetime. But it is more reasonable to assume that he intended the words "then living" to apply to and qualify the words "who would * * * inherit real estate of me * * * had I died intestate." For, in using the words "then living," he must have assumed that Mrs. Pfister would survive him, and meant them to apply to conditions incident to her survivorship. And he obviously meant that, in the event she did survive him, his estate was to be distributed to those of his heirs living at the time of his death who still survived at the death of Mrs. Pfister. But, as she predeceased him, it became impossible to carry out the directions of the clause, and it became meaningless and void, and he died intestate as to his residuary estate. For, as the clause was clearly intended to apply to a purpose which failed, and could only become effective upon the occurrence of a condition which by reason of a contingency not contemplated by it can never exist, it must fail too, and it cannot be bent and twisted to serve other purposes which the testator never contemplated, for that would not be to construe the will he did make but to make one for him. *Eaton's Appeal,* 160 Mich. 230. And since, under Code, art. 48, sec. 1 and art. 93, sec. 135, the next of kin and heirs at law of the testator living at the time of his death were the appellees, his first cousins, his residuary estate was properly distributed to them.

Appellants also contended that the orphans' court had no jurisdiction to distribute the estate, because that involved the construction of a trust, but we find no merit in that contention. In passing the order from which this appeal was taken, the court was dealing, not with a trust but with an intestacy, and its only duty was to ascertain who were the next of kin of the decedent and distribute his residuary

estate to them, and it unquestionably had the power to do that.

Finding no error in the order appealed from, it will be affirmed.

*Order affirmed, with costs to the appellee.*