598 A.2d 1193

**Vasilios D. KAOURIS, Personal Representative
of the Estate of Nikolaos D. Kaouris, etc.**

v.

**Cynthia KAOURIS.**

**No. 24, Sept. Term, 1991.**

Court of Appeals of Maryland.

Dec. 9, 1991.

688

690

James W. Almand and Jerome James LaCorte, Ayres, Jenkins Gordy & Almand, P.A., on brief, Ocean City, for appellant.

John S. Hyle, Jarvis and Hyle, on brief, Ocean City, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The Court of Special Appeals has certified three questions to us, pursuant to Maryland Rule 8–304:[1]

1. Whether an Orphans' Court has jurisdiction to determine the validity of a marital settlement agreement, the interpretation of which is necessary for the Court to decide whether the surviving spouse has waived her right to be appointed as Personal Representative, to receive a family allowance or an elective share of the estate;

2. Does an Orphans' Court have jurisdiction to determine whether such a waiver has occurred, where in order to make that determination, the Court would have to determine whether the waiver, included in a marital set-

---

1. The certification order addressed two appeals, one of which has since been dismissed. By Notice of Voluntary Dismissal, filed October 30, 1991, counsel informed the Court that the case of *Catherine Ann Ardakani v. Haidi Saidfar* has been settled and, thus, the Court dismissed that appeal.

tlement agreement, is ineffective because of a material breach of the agreement by the decedent; and

3. Should the Court of Special Appeals entertain a motion questioning the jurisdiction of the Orphans' Court in cases that have been appealed first to a circuit court and now before the Court of Special Appeals from the judgment of the circuit court?

For the reasons hereinafter provided, we answer "yes" to the first two and "perhaps" to the third.

## 1.

## A.

Regarding the powers of orphans' courts, Maryland Code (1974, 1991 Repl.Vol.), § 2–102 of the Estates and Trusts Article,[2] in pertinent part, provides:

(a) *Powers.*—The court may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent. It may summon witnesses. The court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred.

\*　　\*　　\*　　\*　　\*　　\*

(c) *Rights of interested person.*—An interested person may petition the court to resolve any question concerning an estate or its administration.

Judicial probate "is a proceeding instituted by the filing of a petition for probate by an interested person, or creditor, with the court for the probate of a will or a determination of the intestacy of the decedent, and for the appointment of a personal representative." § 5–401. An "interested person" is:

(1) A person named as executor in a will;

---

**2.** Unless otherwise indicated, all references are to the Estates & Trusts Article.

(2) A person serving as personal representative after judicial or administrative probate;

(3) A legatee in being, not fully paid, whether his interest is vested or contingent;

(4) An heir even if the decedent dies testate, except that an heir of a testate decedent ceases to be an "interested person" when the register has given notice pursuant to § 2–210 or § 5–403(a).

Section 1–101(g). *See Clark v. Strasburg,* 312 Md. 710, 711–12, 542 A.2d 378, 380 (1988).

■ Reviewing the powers conferred on an orphans' court, it is patent that it is a court of limited, as opposed to general, jurisdiction. *See Carrier v. Crestar Bank,* 316 Md. 700, 722, 561 A.2d 227, 239 (1989); *Clarke v. Clarke,* 291 Md. 289, 293, 435 A.2d 415, 417 (1981) ("[A]n orphans' court is a court of a very limited jurisdiction."); *Crandall v. Crandall,* 218 Md. 598, 600, 147 A.2d 754, 755 (1959) ("Orphans' Courts are not courts of general jurisdiction; on the contrary, they are courts of special and limited jurisdiction only, and they cannot, under pretext of incidental or constructive authority, exercise jurisdiction not expressly conferred by law."); *Phillips v. Green,* 179 Md. 583, 588, 19 A.2d 839, 841 (1941) (same); *Talbot Packing Corp. v. Wheatley,* 172 Md. 365, 369, 190 A. 833, 835 (1937) (same); *Goldsborough v. DeWitt,* 169 Md. 463, 473–74, 182 A. 324, 329 (1936) (same); *Marbury v. Ward,* 163 Md. 330, 333, 162 A. 919, 921 (1932) (same); *State v. Talbott,* 148 Md. 70, 79, 128 A. 908, 911 (1925) (same); *Fowler v. Brady,* 110 Md. 204, 208, 73 A. 15, 16 (1909) (same). Moreover, before orphans' courts may exercise jurisdiction, "the facts necessary to clothe them with jurisdiction must affirmatively appear upon the face of their proceedings." *Talbot Packing Corp.,* 172 Md. at 369, 190 A. at 837. *See also Zulver Realty Co. v. Snyder,* 191 Md. 374, 380, 62 A.2d 276, 278 (1948); *Shafer v. Shafer,* 85 Md. 554, 558, 37 A. 167, 168 (1897).

On the other hand, the Legislature intended "to confer adequate power and jurisdiction" to render the powers

actually conferred on an orphans' court effective. *Housman v. Measley*, 139 Md. 598, 602, 115 A. 855, 856 (1921), citing and quoting *MacGill v. Hyatt*, 80 Md. 253, 256, 30 A. 710, 711 (1894). As stated in *Pole v. Simmons*, 45 Md. 246, 249–50 (1876):

> The Code [1860], Art. 93, sec. 230 [3] [the predecessor of § 2–102], confers full power on the Orphans' Court to take probate of wills, grant letters testamentary and of administration, direct the conduct and settling of the accounts of executors and administrators, superintend the distribution of the estates of intestates, secure the rights of orphans and legatees, and to administer justice in all matters relative to the affairs of deceased persons. Under this section, we think it clear the Orphans' Court had jurisdiction of the matter presented by the petition, for it would be impossible to superintend and make distribution of the estate without the authority to determine what was to be distributed; and this necessarily involves the questions as to what are assets, and, when there is a will, who are the legatees, and what is given to them by the will. Having jurisdiction of the subject-matter of the controversy, the Orphans' Court has the right to hear and receive evidence in relation to it; and, if the evidence consists of written instruments, to examine and construe them, in order that it may properly apply it to the case before it.

The rationale for permitting the orphans' court to exercise broad authority within the area of its express jurisdiction was explained in *Hagerstown Trust Co., Ex. of Mealey*, 119 Md. 224, 232–33, 86 A. 982, 985 (App.1913):

> [T]he Orphans' Court is for most purposes the proper forum in which to settle the estate of a deceased person,

---

3. That section provided:
 The court shall have full power to take probate of wills, grant letters testamentary and of administration; direct the conduct and settling of the accounts of executors and administrators, superintend the distribution of the estates of intestates, secure the rights of orphans and legatees, and to administer justice in all matters relative to the affairs of deceased persons.

and to say generally that it possesses no power to construe wills, would be to deny to it the power to approve an account of an executor by which payments of legacies were made, and force the estate of every person who was so unfortunate as to leave a will to the double expense of administration in the Orphans' Court, and then being taken into an Equity Court for a construction of a will and a payment of the legacies contained therein....

*See also Clarke,* 291 Md. at 295, 435 A.2d at 418; *Davis v. Davis,* 278 Md. 534, 537, 365 A.2d 1004, 1006–07 (1976).

 It is well settled that an orphans' court has jurisdiction to conduct judicial probate, § 2–102, which involves the appointment of a personal representative. § 5–401. Moreover, it is empowered fully to administer the estates of deceased persons. *Clarke,* 291 Md. at 293, 435 A.2d at 417; *Wingert v. State,* 125 Md. 536, 541, 94 A. 166, 167 (1915). *See Shapiro v. Ryan,* 233 Md. 82, 87, 195 A.2d 596, 598–99 (1963). Also, such courts must entertain petitions of interested persons and resolve their questions concerning an estate or its administration. § 2–102(c). In that regard, the courts are empowered to pass orders relating to the settlement and distributions of the estate, *see Goldsborough v. DeWitt,* 169 Md. at 473–74, 182 A. at 329, to determine the next of kin, *Longerbeam v. Iser,* 159 Md. 244, 247, 150 A. 793, 794 (1930); *McComas v. Wiley,* 132 Md. 406, 410, 104 A. 52, 53 (1918); *Belt v. Blackburn,* 28 Md. 227, 243 (1868); *Blackburn v. Craufurd,* 22 Md. 447, 466 (1864); "to determine what is to be distributed and who are legatees", *Pole,* 45 Md. at 249; *Redwood v. Howison,* 129 Md. 577, 592, 99 A. 863, 868 (1917), and to direct distribution of a testator's residuary estate to his next of kin and determine the period as of which the next of kin should be ascertained. *Brannan v. Ely,* 157 Md. 100, 106, 145 A. 361, 363 (1929).

 Also included within the court's jurisdiction is the power to resolve questions of ademption of legacy, advancement, and what constitutes the assets of the estate, *Pole,* 45

Md. at 249; *Wilson v. McCarty,* 55 Md. 277, 280 (1881); *Gallagher v. Martin,* 102 Md. 115, 118, 62 A. 247, 248 (1905), and the interest a widow, divorced *a mensa et thoro,* has in the decedent's estate. *Hokamp v. Hagaman,* 36 Md. 511, 517 (1872). Furthermore, orphans' courts are "primarily entrusted with the administration of decedents' estates and, thus, as a general rule the 'estates of deceased persons should ordinarily be administered and finally distributed in the [O]rphans' courts.' " *Clarke,* 291 Md. at 293, 435 A.2d at 417, quoting *Knox v. Stamper,* 186 Md. 238, 245, 46 A.2d 361, 365 (1946). *See also Carrier,* 316 Md. at 724, 561 A.2d at 240, citing *Hagerstown Trust Co., Ex. of Mealey,* 119 Md. at 232–33, 86 A. at 982; *Longerbeam,* 159 Md. at 247, 150 A. at 794, and *Estate of Childs v. Hoagland,* 181 Md. 550, 551–52, 30 A.2d 766, 767 (1943), noting the circumstances under which an orphans' court has been permitted to construe a will incidental to the performance of its legislatively prescribed function.

## B.

The jurisdiction of the orphans' court, as is the case of the limitations on it, is rather more easily stated than applied. Much confusion surrounds the question of when that court may construe a written instrument, including a will. Indeed, on this point, there appear to be two, seemingly conflicting, lines of cases.

On the theory that it was acting simply incidentally to its express jurisdiction, orphans' courts have been permitted to construe wills and other written documents. *See Carrier,* 316 Md. at 721–25, 561 A.2d at 238–40 (codicil); *Phillips v. Heilengenstadt,* 173 Md. 290, 294–95, 195 A. 394, 395 (1937) (will); *Longerbeam,* 159 Md. at 246–47, 150 A. at 794 (will); *Housman,* 139 Md. at 601, 115 A. at 856 (settlement agreement); *Hagerstown Trust Co. Ex. of Mealey,* 119 Md. at 232–33, 86 A. at 985 (will); *Pole,* 45 Md. at 249–50 (a paper executed by the decedent giving her heirs certain sums of money, a release executed in her favor, and a will). In *Hokamp,* 36 Md. at 517 (interpreting decree of circuit court,

agreement of counsel filed in another court and in different case); *Blackburn v. Craufurd,* 22 Md. at 466 (interpreting statute), and *Michael v. Baker,* 12 Md. 158, 169 (1858) (interpreting pre-nuptial agreement), the orphans' court's power to construe the written documents was not questioned.

In other cases, stressing its limited jurisdiction, we have circumscribed an orphans' court's powers with regard to certain written documents. *See Jackson v. Jackson,* 260 Md. 138, 141, 271 A.2d 690, 692 (1970) (will); *Myers v. Hart,* 248 Md. 443, 448, 237 A.2d 41, 45 (1968) (same); *Crandall,* 218 Md. at 600, 147 A.2d at 755 (release); *Tribull v. Tribull,* 208 Md. 490, 503, 119 A.2d 399, 406 (1955) (validity of transfer of bank accounts); *Inasmuch Mission v. Merc. Trust Company,* 184 Md. 231, 234, 40 A.2d 506, 508 (1945) (will); *Hagerstown Trust Co., Ex. of Mealey,* 119 Md. at 235, 86 A. at 986 (trust); *Jones, Adm'r v. Harbaugh,* 93 Md. 269, 282, 48 A. 827, 832 (1901) (release); *Potts v. Potts,* 88 Md. 640, 641, 42 A. 214, 215 (1898) (same); *Shafer v. Shafer,* 85 Md. 554, 561, 37 A. 167, 169 (1897) (same).

It has been suggested that the line of cases typified by *Jones, Adm'r v. Harbaugh, Shafer, Crandall,* and *Tribull,* is irreconcilable with that typified by *Baker, Pole,* and *Housman.* This suggestion is not borne out when the cases are closely scrutinized or because the analysis employed in several of the cases, when discussing the jurisdictional issue, is no longer viable. In seeking to reconcile the cases, we first determine the end to which an orphans' court's jurisdiction is being invoked and the relationship the written document bears to the exercise of that jurisdiction. In other words, the relevant questions are: is the issue before the court one within its express powers and, if so, would construction of the subject document be incidental to the exercise of that power? *See Carrier,* 316 Md. at 724–25, 561 A.2d at 239–240; *Jackson,* 260 Md. at 142, 271 A.2d at 692. Another relevant consideration is whether the party seeking to invoke the court's jurisdiction is an interested party as defined in § 1–101(g). Once the issue before the

court and the power of the court to resolve it have been determined, the rationale underlying the cases becomes clear.

■ *Housman, Pole* and *Baker* illustrate when an orphans' court may construe written documents; they represent cases in which an orphans' court, in the exercise of its express powers to resolve issues properly before it, incidentally interpreted the subject agreements.

In *Housman,* the appellee, the daughter of the testatrix, entered into a settlement agreement with her cousins, the appellants, by the terms of which she agreed that, in addition to what she was left in the will, her share of the estate would be what the appellants paid her pursuant to the agreement. She later filed a caveat to her mother's will and the appellants responded with a petition which, citing the settlement agreement, alleged that she did not have any interest in the estate. The appellee argued that, because it would have "to enforce a contract [the settlement agreement] or give efficacy thereto," 139 Md. at 601, 115 A. at 856, the orphans' court did not have jurisdiction over the case. The appeal from the orphans' court's refusal to receive the petition raised a single question: "whether or not it was the duty of the orphans' court to decide as a preliminary question the right of appellee to caveat the will and have issues sent to the circuit court, before sending such issues to that court for trial." *Id.* Rejecting the jurisdictional argument, the Court said:

> What the court was asked to do was to determine whether appellee has such an interest in the estate disposed of by the will as to entitle her to have issues tried as to the validity of the will; and in this were involved the questions as to the validity and effect of the agreement set out.

*Id.* This Court cited *Pole* and *Safe Deposit & Trust Company, Excr. v. Devilbiss,* 128 Md. 182, 97 A. 367 (1916) to support its holding that an orphans' court, under the circumstances, could construe the settlement agreement. The

latter case stands for the proposition that an orphans' court has the power to determine, as a preliminary matter, whether a person challenging a will has the right to file a caveat. 128 Md. at 187, 97 A. at 369.

In *Pole*, the decedent executed a paper "by which she gave to her children therein named, the sums of money there mentioned for the purpose of putting them upon an equality with [one of them, a] Mrs. Worthington." 45 Md. at 247–48. Her sons, at the same time, "executed a release to her of their claim to a certain proportion of purchase money of lands in which they had an interest, and which she had sold and received the proceeds of the sale." 45 Md. at 248. Thereafter, she advanced money to several of her children and made a will. By the terms of the will, the children to whom advancements were made were charged interest so as to equalize the sums given to each child. Following the decedent's death, one of the daughters filed a petition asking the orphans' court to open and restate an account to include the sums she claimed were advances as part of the assets of the estate. The appellees denied that the orphans' court had jurisdiction because, to determine the question presented by the petition,

> "it had to construe the language and legal effect of the paper executed by Mrs. Simmons on the 3rd of March, 1866, as well as the release of the same date executed by her sons, also Mrs. Simmons' will, and from them to decide what is an advancement; whether the sums of money given by the Exhibit No. 3, were advancements or absolute gifts, and whether in any event, they were assets of Mrs. Simmons' estate."

45 Md. at 249. Rejecting that argument, we reversed the orphans' court's dismissal of the petition, explaining:

> [W]e think it clear the Orphans' Court had jurisdiction of the matter presented by the petition, for it would be impossible to superintend and make distribution of the estate without the authority to determine what was to be distributed; and this necessarily involves the questions as to what are assets, and when there is a will, who are the

legatees, and what is given to them by the will. Having jurisdiction of the subject-matter of the controversy, the Orphans' Court has the right to hear and receive evidence in relation to it; and if the evidence consists of written instruments, to examine and construe them, in order that it may properly apply it to the case before it.

45 Md. at 249–50.

At issue in *Baker* was whether a paper purporting to be the last will of the decedent, a married woman, should be submitted to probate. That paper had not been "made and attested in conformity with" state law governing married women's disposition of property by will; however, the decedent and her husband had entered into an antenuptial agreement, which by its terms, empowered her to make a will. 12 Md. at 168. The appellee, the decedent's daughter, offered the paper and antenuptial agreement for probate. The decedent's husband, the appellant, filed a caveat to the will, contending that it was not executed with his permission or in conformity with state law. This Court affirmed the judgment of the orphans' court admitting the paper to probate. Although observing that "the extent to which the powers vested in [a married woman] under the agreement, may have been executed by her will" is among the questions that "belong properly to the courts of law and equity, which are vested with ample jurisdiction to hear and determine them," 12 Md. at 169, we noted (at 169–70):

In this case the ante-nuptial agreement, which was produced before the Orphans' Court, the execution of which was admitted, abundantly showed that Mrs. Michael was empowered to make a will notwithstanding her coverture. Besides it appears from the agreement, that she was entitled to receive and hold absolutely to her sole and separate use, free from the marital rights of the husband, certain funds specified in the agreement. Under her will, such funds would pass, although the power of disposing of them may not be expressly conferred upon her by the agreement. . . .

The agreement also shows, that Mrs. Michael had a power to dispose, by will, of certain real estate therein mentioned. Whether the will is a sufficient execution of that power, is not a question which the Orphans' Court was called upon to decide. The form and attestation of the will are sufficient to pass such real estate, provided it is to be construed as an execution of the power. Without expressing any opinion on that question, we think the Orphans' Court decided correctly, in admitting the will to probate, as a valid testamentary paper, to pass real and personal estate; but they were not required to decide what extent of property would pass under the will.

*Jones, Adm'r v. Harbaugh* is not to the contrary. There, an orphans' court granted letters of administration to the appellant, the coroner, who was not related to the decedent. The appellee, the decedent's brother, did not challenge the appointment. Instead, he executed a release in connection with a partial accounting of the assets of the estate, which was approved by the orphans' court. Sometime later, the appellee filed a petition in the orphans' court, alleging that his attorneys and the appellant had conspired to defraud him and requesting, among other relief, the appellant's removal as administrator. The appellant appealed his removal and this Court reversed.

While stating that an orphans' court did not have the power to set aside the release signed by the appellee, 93 Md. at 282, 48 A. at 832, the Court nevertheless noted that an orphans' court's jurisdiction over estates of deceased persons, and, in particular, its responsibility for superintending their distribution, required it, under some circumstances, to make inquiries in connection with releases. We explained:

> Under the construction placed on it by this Court in *Carey v. Reed*, 82 Md. 38[3, 33 A. 633 (1896)], if the administrator had been guilty of taking part in the fraud charged by the appellee against his attorneys, or had *fraudulently* withheld from him money to which he was

entitled, that section [Art. 93, § 230 [4] ], it may be conceded, is broad enough to confer jurisdiction on the Orphans' Court. For although it has not the power to set aside the release executed by the appellee, as that is vested in Courts of equity, [*Shafer v. Shafer*, 85 Md. 554, 37 A. 167 (1897) ], yet if the administrator had *fraudulently* obtained that release and refused to pay the money distributed to the appellee, it would have been such conduct as would have authorized the Orphans' Court to remove the administrator from the further administration of the estate. There is a wide difference between setting aside a release, so that it can no longer be a bar to recovery of the amount affected by it, and inquiring into alleged fraud connected with it, so that the fraud, if proven, may be used to show that the party guilty of it is not a suitable person to be continued as administrator. If the administrator had imposed on the appellee and obtained the release by fraud, the Orphans' Court would not be so helpless in its supervision over one of its appointees, as to be precluded from such inquiries for the purpose of determining whether he should be permitted to continue in his position. (emphasis in original)

*Id.*

The express powers implicated in *Jones, Adm'r v. Harbaugh* were those enabling the court to "superintend the distribution of the estate of intestates, secure the rights of orphans and legatees, and to administer justice in all matters relative to the affairs of a deceased persons." *Id.* Determining the validity *vel non* of a release is not directly or explicitly connected with the exercise of those powers. But examining the facts surrounding a release's execution to determine whether it was fraudulently obtained or the distribution to a legatee fraudulently withheld is, however. Consequently, we acknowledged that an orphans' court could properly decide the issue presented, notwithstanding that deciding the issue may have had implications as to the

---

**4.** *See* note 3 *supra*.

validity *vel non* of the release, an issue it ordinarily may not decide. We held the proof insufficient to prove fraud.

*Shafer*, the case upon which the *Harbaugh* court relied for the proposition that the power to set aside releases is vested in the equity courts, and *Crandall*, which also relied on *Shafer*, are somewhat different. The executor in *Shafer* passed, and settled, his first account, which was approved by the orphans' court. Thereafter, certain of the distributees of the estate, whose receipt of their shares was reflected in that account and evidenced by releases they had signed, petitioned the court to correct errors they alleged in the account. The petition did not allege that the releases had been acquired by fraud. After pleadings had been filed and testimony taken, the court rescinded its order insofar as it approved the executor's claim for services rendered the testator in his lifetime and a sum paid for professional services rendered in settlement of the estate.

On appeal, this Court observed, as to an essential element of the distributees' contention, that it had "found no satisfactory legal proof which sustains the allegations of the petition.... [T]here is a total absence of any proof which legally tends to show that any item of the administration account was unjust, false, or fraudulent or improperly allowed." 85 Md. at 558, 37 A. at 168. Noting the "special limited jurisdiction" of orphans' courts and the necessity that the facts upon which it is based must "affirmatively appear on the face of their proceedings," not simply inferred or presumed, *id.*, we acknowledged that the correctness of an executor's account is a question for such courts. 85 Md. at 559, 37 A. at 168.

Addressing the legal effect of the releases and their relationship to the question before the orphans' court, the Court recognized that the releases, which referred specifically to the first account and "release[d], exonerate[d], acquit[ted] and forever discharge[d the executor] from all claim or demand whatsoever on account of said settlement as aforesaid, either in law or equity," 85 Md. at 560, 37 A.

at 169, "are absolute and operate as estoppels *in pais*." 85 Md. at 561, 37 A. at 169. We then said:

"The Court below had no jurisdiction to inquire into their consideration, nor to pass upon or determine their validity. That duty belongs to another jurisdiction, and was no part of the jurisdiction which the Court below sought to exercise."

*Id.*

In *Crandall*, the question presented was whether the orphans' court had jurisdiction to determine the validity of the release the decedent's widow gave the executor of the estate and the residuary beneficiaries under the decedent's will. The widow signed the release after the decedent's death and, later, filed an election to take her statutory share. When the executor filed an account as if the election had not been made, the widow "filed a petition in the Orphans' Court in which she alleged the invalidity of ... the release that she had given the executor and the residuary legatees." 218 Md. at 599–600, 147 A.2d at 755. It was upon this factual pattern that we said, reversing the orphans' court, that it "cannot, under pretext of incidental or constructive authority, exercise jurisdiction not expressly conferred by law." 218 Md. at 600, 147 A.2d at 755.

In both *Shafer* and *Crandall*, separate and apart from the construction of the releases, the issue before the orphans' court was within that court's express power: in *Shafer*, it was the accuracy of the executor's account, while in *Crandall*, it was the entitlement of the widow to share in her deceased husband's estate. Moreover, in each case, construction of the release was related, even if not directly so, to resolution of that issue. Indeed, in each case construction of the release was arguably but an incident of the orphans' court's exercise of power expressly given it. Nevertheless, this Court held in each case that the orphans' court had no "jurisdiction" to construe the release, meaning, apparently, that it had no "power" to do so. For the reasons that will appear in part C., *infra*, the *Shafer* and

*Crandall* analysis pertaining to an orphans' court's power to construe releases, in particular, and other written documents, in general, is expressly disapproved.[5]

The issue in *Tribull* was "whether a legatee may sue in equity to enforce a claim on behalf of the estate or may only take proceedings in the Orphans' Court to require the executor to sue." 208 Md. at 493, 119 A.2d at 401. At the center of the controversy, however, was, rather than construction of a written instrument, the validity of a transfer of title to a bank account, effected shortly before her death, from the sole name of the decedent to a trust account with one of her sons. The appellant sued his brother in the circuit court, asking that court to set aside the transfer of title to the bank account. This Court recognized that "administration of a decedent's estate is committed to the Orphans' Court." 208 Md. at 499, 119 A.2d at 404. It also reiterated the power of that court to superintend the executor of such estates. 208 Md. at 500, 119 A.2d at 404. The Court noted, on the other hand, that, because the orphans' court is not empowered to try "a question of title as between an administrator and a separate [non-interested]

---

5. It is at least plausible that *Shafer v. Shafer*, 85 Md. 554, 37 A. 167 (1897) and *Crandall v. Crandall*, 218 Md. 598, 147 A.2d 754 (1959) may be distinguished on another basis. Because the basis for jurisdiction must "affirmatively appear on the face of the proceedings," *Shafer*, 85 Md. at 558, 37 A. at 168, and not inferred or presumed, the manner in which the construction issue is raised is critical. Thus, in *Shafer*, it is arguable that because petitioners failed to allege and prove that they had been fraudulently induced to give the executor the releases, the orphans' court's exercise of jurisdiction had to be inferred or presumed. Similarly, in *Crandall*, validity of the release was raised in the context of a challenge to the executor's statement of account. Notwithstanding the previous filing in the court, by the widow, of an election to take her intestate share, an orphans' court's superintendence of an executor and the accounts he or she may pass does not permit it, as an incidental matter, to interpret releases when there is no explicit connection between the validity of the release and the executor's acts in administration of the estate. In other words, in order to reach the result it did, the orphans' court must have inferred that the challenge to the validity of the release related to the widow's election to take an intestate share of the decedent's estate.

claimant," [6] *id.,* 119 A.2d at 405, citing *Talbot Packing Co. v. Wheatley,* 172 Md. at 369–70, 190 A. at 835, the only remedy it could have given, had the case been filed initially in the orphans' court, would have been to direct the executor to bring suit. 208 Md. at 503, 119 A.2d at 406.

We therefore reiterate: whether the orphans' court has the power to construe a written document, be it a release, a will, or another instrument, *is* dependent on what the party is asking the court to do and whether, when the court construes that document, it does so consistent with, and in furtherance of, an express grant of power.

## C.

Even after the jurisdictional issue has been resolved, the answer to the first two certified questions still may not be obvious. In *Clarke,* while generally recognizing the power of the orphans' court to construe wills incidental to administration and final distribution of a decedent's estate, we also acknowledged that there are instances in which construction of a will more appropriately should be done by the circuit court. We explained:

> Turning to the matter of will construction, there are circumstances when equity should exercise jurisdiction. If a substantial issue as to the meaning of a will exists, involving ambiguous or intricate provisions, construction of the will is generally for the equity court and beyond the authority of the orphans' court. As Judge Delaplaine said for the Court in *Inasmuch Mission v. Merc. Tr. Co., supra,* 184 Md. at 234 [, 40 A.2d at 508]: "The jurisdiction of equity in the construction of wills ... arises from the difficulty of understanding the meaning of complicated

---

**6.** It is true that the appellee was a legatee under his mother's will; however, he was a non-interested party insofar as the bank account was concerned. *See Talbot Packing Co. v. Wheatley,* 172 Md. 365, 370, 190 A. 833, 835 (1937). *Cf. Pratt v. Hill,* 124 Md. 252, 257, 92 A. 543, 545 (1914) (orphans' court has jurisdiction to try title to personal property claimed by both administrator and persons interested in the estate).

provisions in a will, or the uncertainty as to the rights and interests of the parties claiming under them." *See Jackson v. Jackson, supra,* 260 Md. at 141 [, 271 A.2d at 692]; *Legge v. Canty* [, 176 Md. 283, 286, 4 A.2d 465, 467 (1939) ]; 1 P. Sykes, *Probate Law and Practice,* § 271 (1956).

However, it is settled that some issues of construction are for the orphans' court. Where the language of the will is such "as to permit no reasonable doubt of its meaning ...[,] a court of equity will refuse to construe it," and construction is for the orphans' court. *Legge v. Canty, supra,* 176 Md. at 286[, 4 A.2d at 466].

291 Md. at 294, 435 A.2d at 418. In that case, the decedent's will provided:

In the Name of God, Amen I, Helen Marie Clarke being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish and declare this to be my Last Will and Testament, as follows: First, after my lawful debts are paid, I give George Francis Clarke the authority to be the administrator of my entire estate, I give Ignatius Benedict Clarke and Catherine Mae Clarke, permission to farm the land for a period of five (5) years, if they so desire. At the end of that time if my sons and daughters so desire, the farm is to be sold and the money equally divided among the surviving sons and daughters of my marriage to Joseph George Clarke. If any of my children want to buy the farm, they will have the right to do so at not more than Two Thousand Dollars ($2,000) per acre.

*Id.* at 290, 435 A.2d at 416. The orphans' court had ordered the decedent's property sold by public or private sale to pay her debts and administration expenses and denied the petitioner's motion to cancel that sale and, instead, allow him to purchase the property at the $2,000.00 per acre price. This prompted the petitioner to file an action in the circuit court to enjoin the public sale and to have the court construe his mother's will. We expressed the view that, were construction of the provisions necessary, it "probably [would] be for

the equity court under our decisions...." [7] 291 Md. at 295, 435 A.2d at 418.

Application of the *Clarke* complexity test does not resolve whether, when the circuit court exercises jurisdiction in a complicated construction matter, the orphans' court is divested of jurisdiction or is simply precluded from acting by virtue of the superior jurisdiction of the circuit court. Stated differently, does the determination that a construction matter is "complicated" affect the orphans' court's *power* to resolve the issue or merely the *propriety* of its doing so? This issue was not directly addressed by *Clarke*. Nevertheless, we think it clear both from the circumstances and a fair reading of *Clarke*, that it affects only the propriety of the orphans' court acting.

When jurisdiction in a sense other than fundamental is involved, the issue is "the propriety of granting the relief sought," *Moore v. McAllister*, 216 Md. 497, 507, 141 A.2d 176, 182 (1958), quoting *1 Pomeroy, Equity Jurisprudence* (5th ed. 1941), §§ 129–31, an issue that "merges into the final [judgment] and cannot therefore be successfully assailed for that reason once enrolled." *First Federated Com. Tr. v. Commissioner*, 272 Md. 329, 334, 322 A.2d 539, 543 (1974).

Whether a court has fundamental jurisdiction, *i.e.*, the power, to decide a matter, must be determined by looking to "the applicable constitutional and statutory pronouncements," *First Federated Com. Tr.*, 272 Md. at 335, 322 A.2d at 543, because fundamental jurisdiction involves the power, or authority, of a court to render a valid final judgment. *Stewart v. State*, 287 Md. 524, 526, 413 A.2d 1337, 1338 (1980). It is a court's "power to act with regard to a subject matter ... 'conferred by the sovereign authority which organizes the court, and is to be sought for in the

---

**7.** *Brees v. Cramer*, 322 Md. 214, 586 A.2d 1284 (1991) is an example of a case in which a complex construction issue was involved. The Court had to decide in the face of a contention that the agreement was void because one of the covenants had not been met, whether covenants in a separation agreement were interdependent.

general nature of its powers, or in authorities specially conferred.' " *Pulley v. State*, 287 Md. 406, 416, 412 A.2d 1244, 1249 (1980), quoting *Cooper v. Reynolds' Lessee*, 77 U.S. (10 Wall), 308, 316, 19 L.Ed. 931 (1870). *See First Federated Com. Tr.*, 272 Md. at 335, 322 A.2d at 543 ("If by that law which defines the authority of the court, a judicial body is given the power to render a judgment over that class of cases within which a particular one falls, then its action cannot be assailed for want of subject matter jurisdiction."); *Medical Examiners v. Steward*, 207 Md. 108, 111, 113 A.2d 426, 427 (1955) (Fundamental jurisdiction exists when the court has jurisdiction over the subject matter and the parties.); *Moore v. McAllister*, 216 Md. at 507–08, 141 A.2d at 182 ("[J]urisdiction over the person and the subject matter goes to the very basic *power* of the equity court." (emphasis in original)).

■ An orphans' court has express power to conduct judicial probate, to direct the conduct of personal representatives and to pass orders incidental thereto. It also has jurisdiction over interested persons and creditors, who invoke the court's power to determine issues within its express powers. There is no dispute, *see e.g., Clarke*, an orphans' court, incidental to these powers, may have to interpret written documents. It is not, however, the fact that it interprets a particular document that determines whether it has fundamental jurisdiction; rather, it is the issue upon which the interpretation of the document bears that has that effect; that which is incidental does not divest the court of jurisdiction. Accordingly, once it is determined that the subject matter, incident to which a document must be construed, is within the jurisdiction of the orphans' court, that court is empowered to interpret that written document. Simply because an equity court may deem the document to be sufficiently ambiguous or complex to require it to exercise jurisdiction affects only the propriety of the orphans' court acting, not its jurisdiction, *i.e.*, its power to proceed.

■ Jurisdiction, in its fundamental sense, may be raised at any stage of the proceedings, even at the appellate level. *See Berlinsky v. Eisenberg,* 190 Md. 636, 640, 59 A.2d 327, 328 (1948); *Webb v. Oxley,* 226 Md. 339, 343–44, 173 A.2d 358, 360 (1961), *cert. denied,* 369 U.S. 803, 82 S.Ct. 642, 7 L.Ed.2d 550 (1962). Therefore, because the issue whether the orphans' court should construe an ambiguous and complex instrument goes not to that court's power to act with regard to a decedent's estate, generally it is waived and ordinarily cannot be raised thereafter on appeal, unless it is raised in that court. *See* Maryland Rule 8–131(a).[8]

## 2.

Appellee Cynthia Kaouris married Nikolaos D. Kaouris, the decedent, in 1983. Approximately 16 months before their separation in November, 1988, while both were represented by counsel, they entered into a marital settlement agreement. That agreement, *inter alia,* provided that: (1) "The parties have agreed to separate and to live separate and apart without any cohabitation, and they have so lived continuously since the date of this agreement first above written." [9]; (2) they would have joint custody of the child

---

**8.** That rule provides:

The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

**9.** The remainder of the provision provides:

Neither party shall interfere with or molest the other, nor endeavor in any way to exercise any marital relations with the other or to exert or demand any right to reside in the home of the other. Each party shall be free to go his or her own way as fully and to the same extent as if they had never been joined in matrimony. [E]ach may reside at such place or places as he or she may select and each may, for his or her separate use and benefit, conduct, carry on and engage in any business, profession, or employment which to him or her may seem advisable.

born to the marriage; (3) the decedent would pay appellee $100.00 per week child support, $50.00 per week alimony, and provide health insurance coverage for the minor child; and (4) the parties would transfer certain personal and real property between themselves. The agreement also provided:

14. Except as otherwise provided herein, each party hereby waives, releases and relinquishes unto the other all rights or claims of dower, curtesy, descent, inheritance, distribution and all other rights or claims growing out of said marriage between them and each shall be forever barred from any and all right in the estate of the other, whether real, personal or mixed and whether now or hereafter acquired, and each will, upon request of the other party, execute good and sufficient release of dower or curtesy to the other spouse, her or his heirs, assigns or personal representatives or will join with the spouse or her or his assigns in executing any deed to any real property now or hereafter acquired or owned by the other spouse, all at the expense of the spouse so requesting. This paragraph includes, but is not limited to, rights and claims under the Property Disposition Act, section 8–201 et. seq., Family Law Art., Ann.Code of Maryland, and all amendments thereto.

The decedent died, leaving a will appointing appellant, Vasilios D. Kaouris, personal representative of his estate. Appellee did not contest his appointment; rather, she filed a claim for a family allowance [10] and an election to take her intestate share.[11] Appellant opposed both claims, raising,

---

In point of fact, the parties had not separated when they executed the agreement.

**10.** Section 3–201 provides, in pertinent part: "The surviving spouse is entitled to receive an allowance of $2,000 for personal use...." Effective July 1, 1991, Ch. 645, Laws 1991 amended this section to increase the amount of the family allowances. The allowance for the surviving spouse is now $5,000.00. *See* § 3–201(a) (1991 Cum.Supp.).

**11.** Section 3–203(a) provides:

by way of defense, the marital settlement agreement and, in particular, appellee's waiver of rights in the decedent's estate. Relying on § 3–205,[12] he argued that, by executing the marital separation agreement, appellee forfeited her right to take an elective share. Following an evidentiary hearing, the orphans' court ruled against appellant as to the surviving spouse's allowance; it did not decide the propriety of appellee's spousal election. Appellant appealed directly to the Court of Special Appeals, pursuant to Maryland Code (1974, 1989 Repl.Vol.), § 12–501 of the Courts and Judicial Proceedings Article.[13]

Inasmuch as the parties had never been divorced, at issue before the orphans' court was whether, by virtue of her execution of the marital property agreement, appellee had waived her right to the spousal allowance and/or elective share. It was for that purpose—its bearing on the answer

---

Instead of property left to him by will, the surviving spouse may elect to take a one-third share of the net estate if there is also a surviving issue, or a one-half share of the net estate if there is no surviving issue.

**12.** Section 3–205 provides:
The right of an election of a surviving spouse may be waived before or after marriage by a written contract, agreement, or waiver signed by the party waiving the right of election. Unless it provides to the contrary, a waiver of "all rights" in the property or estate of a present or prospective spouse, or a complete property settlement entered into after or in anticipation of separation or divorce, is a waiver of any right to his family allowance as well as to his elective share by each spouse in the property of the spouse, his right to letters under § 5–104, and is an irrevocable renunciation of any benefit which would pass to him from the other by intestate succession, by statutory share, or by virtue of the provisions of a will executed before the waiver or property settlement.

**13.** That section provides:
A party may appeal to the Court of Special Appeals from a final judgment of an orphans' court. However, if the final judgment was given or made in a summary proceeding, and on the testimony of witnesses, an appeal is not allowed under this section unless the party desiring to appeal immediately gives notice of his intention to appeal and requests that the testimony be reduced to writing. In such case the testimony shall be reduced to writing at the cost of the party requesting it.

to that question—that appellant offered the marital property agreement in the orphans' court. That court determined, presumably after it, construing the agreement, concluded that the provisions of the agreement were interrelated,[14] that the agreement was void because appellee and the decedent had never separated as the agreement contemplated. The question presented, therefore, is whether the orphans' court had the power to construe the agreement? Necessarily involved in this determination is appellee's entitlement, notwithstanding her execution of the marital settlement agreement, to receive a share of her husband's estate, an issue clearly within the jurisdiction of the orphans' court. *See Hokamp v. Hagaman,* 36 Md. at 518. Appellant does not contend that construction of the agreement is irrelevant and immaterial to the court's decision on this point; rather, he argues that, due to the complexity involved in the construction of the agreement, the circuit court is the appropriate court to construe it.

We hold that where it is incident to the fulfillment of the court's jurisdiction—in this case, the determination of the appellee's interest in the subject estate—the orphans' court may construe a marital settlement agreement, for the purpose of deciding whether the agreement is valid or void, including determining whether the parties have actually separated.

As previously noted, the critical focus is on the court's power to act, which, in turn, depends upon the relief being sought. Here, appellee asked the court to grant her the marital allowance and her elective share, matters within the express powers of the orphans' court. But whether the relief should be granted depends upon how the court construes the agreement—whether the court decides that it is valid. Construction of the agreement is merely incidental to the court's exercise of jurisdiction over, and rendition of a judgment as to appellee's entitlement to share in the

---

**14.** *See* n. 7 *supra.*

estate, the issue before it. The court acted within its power in construing the agreement.

3.

As we have seen, appeals from the judgment of an orphans' court may go directly to the Court of Special Appeals. Courts Article, § 12–501. The judgment may also be appealed to the circuit court, in which event, the appeal is heard *de novo*. Courts Article, § 12–502. That section provides, in pertinent part:

(a) *In general; exception in Harford and Montgomery counties.*—(1) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphans' court. The appeal shall be heard de novo by the circuit court. The de novo appeal shall be treated as if it were a new proceeding and as if there had never been, a prior hearing or judgment by the orphans court. The circuit court shall give judgment according to the equity of the matter.

Thus, by its express terms, § 12–502 contemplates that, when a case has been appealed from an orphans' court to the circuit court, the Court of Special Appeals will review the judgment of the circuit court, and not that of the orphans' court. *See also Rome v. Lowenthal*, 290 Md. 33, 42, 428 A.2d 75, 80 (1981) ("In a proceeding such as this a circuit court ... is not engaged in appellate review of whether the orphans' court made the proper determination upon the basis of what was before it, but is expected to make its own determination on the evidence brought before it."); *Soothcage v. King*, 227 Md. 142, 152, 176 A.2d 221, 227 (1961) ("This means that the Circuit Court is to consider the evidence adduced before it and that the case goes on and is decided as if no judgment had been rendered.").

The *King* court further elaborated:

We think that in giving judgment "according to the equity of the case," the Circuit Court may enter any judgment which the Orphans' Court might properly have

entered on the same evidence; and we deem it pertinent, therefore, to consider the powers of the Orphans' Court with regard to these last two questions [under review]. 227 Md. at 153, 176 A.2d at 227. We find this significant because it suggests that, notwithstanding the proceedings are appellate in nature, the circuit court, although expected to make its own determination, is limited to those that could properly have been made by the orphans' court; the circuit court does not exercise *its* plenary jurisdiction over the matter. Consequently, we hold that a circuit court's jurisdiction to hear an appeal from an orphans' court *de novo* depends upon whether the orphans' court had jurisdiction over the case in the first place.[15]

▆▆▆▆▆ Whether, in cases that have been appealed first to a circuit court, the Court of Special Appeals should entertain a motion questioning the jurisdiction of the orphans' court, or should raise the issue on its own motion, is dependent upon whether it is the orphans' court's fundamental jurisdiction that is being questioned.[16] As we have already discussed, see part 1,C., *supra,* only the power of a court to act can be challenged at any stage of the proceedings. A party is foreclosed from challenging, for the first time on appeal, the propriety of the exercise by a court of its power to act. Where, however, the appeal is from an orphans' court to a circuit court, pursuant to Courts Article § 12–502, the exercise of that orphans' court's power may

---

**15.** Section 2–105(b) permits the orphans' court upon an issue of fact to transmit a request of an interested party to a court of law for determination. It may do so, however, only if it has jurisdiction of the subject, the question is properly before it, and it is relevant and material to the question before the court. *Kao v. Hsia,* 309 Md. 366, 374–75, 524 A.2d 70, 74 (1987); *Myers v. Hart,* 248 Md. 443, 447, 237 A.2d 41, 44 (1968); *Hill v. Lewis,* 21 Md.App. 121, 125, 318 A.2d 850, 853 (1974). The test of the circuit court's exercise of *de novo* appellate jurisdiction is consistent.

**16.** The appellant in the *Ardakani* case appealed the judgment of the orphans' court first to the circuit court and, when unsuccessful there, to the Court of Special Appeals. This difference between it and *Kaouris* prompted the certification of the third question.

be challenged in the circuit court even though the issue was not raised in the orphans' court. This is so because the matter is heard *de novo*. On the other hand, if the challenge is to the power of an orphans' court to decide an issue, it may be raised for the first time in the circuit court, or, for that matter, at any point in the litigation process prior to its termination. For the latter challenge to be successful, it must appear that the issue decided by the orphans' court was neither within its express grant of power nor incidental thereto.

In the case *sub judice*, the interpretation of the marital separation agreement was incidental to the court's exercise of an express power; hence, the issues raised by the Court of Special Appeals on its own motion affect the propriety of the court's ruling, not its power to have made it.

CERTIFIED QUESTIONS ANSWERED AS HEREIN SET FORTH; CASE REMANDED TO COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS. COSTS TO ABIDE THE RESULT.